NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MUNICH REINSURANCE AMERICA, INC., | : | Civil Action No.: 09-6435 (FLW) |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| AMERICAN NATIONAL INSURANCE COMPANY, | : | |
| | : | |
| **Defendant.** | : | |

ARPERT, U.S.M.J

## I.     INTRODUCTION

This matter comes before the Court on Motions by Defendant American National Insurance Company ("Defendant") to compel discovery responses and extend discovery [dkt. entry no. 48] and for protective order [dkt. entry no. 49], returnable February 7, 2011 and February 22, 2011, respectively.  Plaintiff Munich Reinsurance America, Inc. ("Plaintiff") filed opposition papers on January 24, 2011.  Defendant filed replies on January 31, 2011.  For the reasons stated herein, Defendant's Motions are granted in part.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, "formerly known as American Re-Insurance Company" ("AmRe"), was party to "Workers' Compensation Per Occurrence Excess of Loss Retrocession Agreement[s]" ("Agreements") with Defendant "effective November 1, 2000 through December 31, 2001".  *See* Pl.'s Complaint, dkt. entry no. 1 at 1-2; *see also* Def.'s Br., dkt. entry no. 44 at 1.  Plaintiff alleges that Defendant "agreed to reinsure certain liabilities of Plaintiff arising as a result of Plaintiff's participation in a Workers Compensation Excess of Loss Reinsurance Agreement ("Reinsurance

Agreement")...with Everest National Insurance Company ("Everest"). *Id.* at 2. Specifically, pursuant to the Agreements, Plaintiff alleges that Defendant "agreed to indemnify Plaintiff for the amount of ultimate net loss which may accrue to Plaintiff as a result of loss or losses occurring during the term of...[the Agreements] as a result of [Plaintiff's] participation in the Resinsurance Agreement, covering insurance or resinsurance business in force at the inception of [the Agreements] and business written and/or renewed during the term of [the Agreements]". *Id.* at 2-3. Further, pursuant to the Agreements, Plaintiff alleges that Defendant "agreed to pay Plaintiff...on demand...[for] Defendant's proportion of all losses and/or loss expenses paid by Plaintiff arising from the [Reinsurance Agreement], including any and all expenses incurred directly by Plaintiff in the litigation, defense and settlement of claims made against Plaintiff by Everest under the [Reinsurance Agreement]". *Id.* at 3. The Court notes that Plaintiff alleges that the Agreements "shall be governed in all respects, including performance, administration, and interpretation, in accordance with the laws of the State of New York". *Id.*

Plaintiff "has billed Defendant for and demanded amounts due and owing under the [Agreements], less credits owed by Plaintiff to Defendant, for a total balance of $4,330,578.01". *Id.* However, Plaintiff alleges that Defendant "has not paid" this balance due or any portion thereof. *Id.* As a result, Plaintiff filed a Complaint [dkt. entry no. 1] on December 22, 2009 alleging breach of contract (*Id.* 3-5) and seeking a declaratory judgment for any future losses (*Id.* at 5-6). In response, Defendant filed an Answer that included Affirmative Defenses of "breach of contract", "failure to satisfy conditions precedent", release of alleged contractual provisions that form the basis of Plaintiff's lawsuit, "failure of consideration", "statutes of limitation/laches", "liability of other parties", "mitigation", release by prior inconsistent conduct, "mutual mistake", "breach of access to records contract provision", bar of claims because Plaintiff seeks reimbursement for underlying

insurance claims that were not properly payable, and "suit not appropriate for declaratory relief".
*See* Def.'s Answer, dkt. entry no. 7 at 5-8.  Further, Defendant's Answer included a Counterclaim for "refund", "damages in the amount of [the] refund", "costs, attorneys' fees, pre- and-post judgment interest, and all other relief...to which Defendant [is] entitled".  *Id*.

Based upon the Court's initial Pretrial Scheduling Order, discovery in this matter was to be completed by October 1, 2010. [dkt. entry no. 31]  In response to Defendant's unopposed application to extend discovery (*see* dkt. entry nos. 32-34), the Court extended the discovery period to December 1, 2010 [dkt. entry no. 35].  Notably, Defendant served a subpoena on Everest on October 15, 2010 and the parties continued to engage in significant discovery up until the end of November 2010.  *See* Def.'s Br., dkt. entry no. 40 at Ex. 2; *see also* Def.'s Br., dkt. entry no. 44 at 7-9.  The parties notified the Court of significant discovery disputes in late November and early December which became the subject of the pending motions filed by Defendant on January 18, 2011 (*see* dkt. entry no. 48) and January 20, 2011 (*see* dkt. entry no. 49).

Specifically, with respect to Defendant's Motion filed under docket entry no. 48, Defendant seeks a Court Order compelling Plaintiff "to answer Defendant's Second Set of Interrogatories, Interrogatory No. 17" ("Interrogatory no. 17"), "Defendant's Third Set of Interrogatories, Interrogatory No. 1" ("Interrogatory no. 1"), and to "present a witness to testify to Defendant's...30(b)(6) notice with respect to Topics 1, 2, and 3".  *See* Def.'s Proposed Form of Order, dkt. entry no. 46-10.  Defendant's Interrogatory no. 17 states:

> For each of the claims which comprise the balances you contend are owed by Defendant under Counts One and Two of your Complaint and for each claim which you contend is a potential "Future Loss" under Count Three of your Complaint, identify by claim number and claimant number (a) the initial date upon which the claim or accident 'was reserved at 50% of the resinsured attachment point'; (b) the amount you are relying upon for determination of when a claim was at or above 50% of the reinsured attachment point; (c) the date you

actually provided notice of the claim to IOA Re and/or Defendant;
and (d) the bates number for each such notice.

See Def.'s Br., dkt. entry no. 46-4 at Ex. C.  Defendant's Interrogatory no. 1 states:

> For each of the claims which comprise the balances you contend are
> owed by Defendant under Counts One and Two of your Complaint
> identify by claim number and claimant name for each claim (a) the
> total amount you allege is owed; (b) the amount which you allege is
> owed for 'indemnity'; (c) the amount you allege is owed for
> 'medical'; (d) the amount you allege is owed for 'expense'; and (e)
> any amount owed for underlying 'extra or non-contractual damages
> or legal fees and expenses attendant to the defense thereof'.

See Def.'s Br., dkt. entry no. 46-6 at Ex. E.  Finally, Topics 1, 2, 3, and 4 of Defendant's 30(b)(6)

notice states:

> Pursuant to Rule 30(b)(6), Plaintiff shall designate and produce for
> deposition one or more officer(s), director(s), managing agent(s), or
> other persons(s) to testify on its behalf, regarding the following
> matters:
>
> 1.   The dollar amount that Plaintiff is requesting for each of the
>      Claims including how the amount is apportioned among
>      components of the Claims, including, medical, indemnity,
>      expenses part of loss, loss adjustment expenses, and extra-
>      contractual amounts.
> 2.   The 'handling' of each of the Claims including the timing and
>      amount of the initial amount of setting of reserves and any
>      subsequent modification of the reserves.
> 3.   Plaintiff's demand(s) for payment from Defendant.
> 4.   Damages suffered and/or relief sought by Plaintiff against
>      Defendant.

See Def.'s Br., dkt. entry no. 46-8 at Ex. G.

With respect to Defendant's Motion filed under docket entry no. 49, Defendant seeks a Court

Order protecting the "documents listed on Defendant's Privilege Log...from disclosure" and

production to Plaintiff.  See Def.'s Proposed Form of Order, dkt. entry no. 49-6.  Plaintiff has

challenged Defendant's Amended Privilege Log entry nos. 1-13 and 19-38, arguing that same are

not protected under the work product doctrine, attorney-client privilege, or the common interest

doctrine.  *See* Pl.'s Opp'n Br., dkt. entry no. 54 at 4, 9-10; *see also* Pl.'s Opp'n Br., dkt. entry no. 454-1 at Ex. 1.

### A.     Defendant's Arguments in Support of the Motion to Compel

Initially, Defendant notes that Plaintiff "brought this action alleging that Defendant is liable...under [the Agreements]" such that "if Plaintiff pays claims, then Defendant must pay Plaintiff".  *See* Def.'s Br. at 1.  Further, Defendant notes that the Agreements include a provision whereby certain "categories of claims shall be reported to the Reinsurer immediately regardless of any questions of liability...or coverage" and that Plaintiff's position "has been to ignore this requirement".  *Id*. at 2.  Defendant contends that "Plaintiff has...refused to respond to discovery requests where it deems...[Defendant's] defenses are not meritorious" such that "Plaintiff's incomplete production of materials...has prejudiced Defendant".  *Id*. at 3.  Notably, Defendant states that through discovery it has learned "that Plaintiff failed to share pertinent loss analysis with IOA Re, Inc. ("IOA Re")", Defendant's reinsurance manager, "at the time [Defendant] was considering whether or not to enter into the Agreements with Plaintiff" and concealed or withheld "material information related to the anticipated amount of losses from the workers compensation program with Everest".  *Id*. at 8-9.

### 1.     Plaintiff should be required to produce a 30(b)(6) designee for deposition.

Defendant maintains that Plaintiff has "refused to produce a corporate designee for Topics 1, 2, and 3" related to Defendant's 30(b)(6) notice.  *Id*. at 8-9.  Citing *Novartis Phar. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 161-63 (D. Del. 2001), *Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415 (D. Del. 2010), *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235-36 (E.D. Pa. 2008), *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 417, 419 (N.D. Ill. 1977), and MOORE'S FEDERAL PRACTICE – CIVIL 7-33 § 33.04, Defendant argues that "it is entirely appropriate to seek

written discovery concerning facts related to a defense or claim and also seek to depose a witness on the same or similar Topics". *Id.* at 13-16.  Defendant contends that although two (2) of Plaintiff's employees responsible for claims administration were deposed in their individual capacities, neither of these individuals was "prepared to testify as a 30(b)(6) witness", "counsel for Plaintiff declined to allow them to testify as to the collective corporate knowledge", and "electronic logs for all...claims had not been produced at the time of [their] deposition[s]".  *Id.* at 13-16.  Citing *New Eng. Carpenters Health Benefits Fund v. First Databank, Inc.*, 242 F.R.D. 164, 169 (D. Mass. 2007), Defendant further argues that "it is not a valid objection to presenting a corporate witness designee that the designee has already been deposed in his individual capacity".  *Id.* at 16.

By way of background, Defendant states that "Plaintiff has a computerized note system whereby its employees can communicate with each other and...retain information regarding claims". *Id*. at 3-4.  Defendant maintains that "this functionality allows Plaintiff to store pertinent information with regard to claims such as when initial reserves are set... [or] instructions to increase or decrease reserve amounts on a claim by claim basis", and contends that "for every claim, there is a log created which provides potentially missing information...such as date and author".  *Id*.  Defendant argues that "these logs were...available to Plaintiff prior to...depositions...but were..not produced...until after...deposition[s]", including the "deposition of a corporate representative related to handling of claims and determination of reserves".  *Id*. at 4-5.  Defendant further contends that "these logs are necessary to provide contextual information...[regarding] textual entries in the electronic note system" and that "such information is relevant...in order to determine when claims were reserved at 50% of the reinsured attachment point", thereby triggering "Plaintiff's obligation to notify Defendant".  *Id*.

**2.      Plaintiff should be required to provide answers to interrogatories.**

With respect to written discovery, Defendant maintains that Plaintiff "refused to provide an answer to items (a) and (b)" related to Interrogatory no. 17 of Defendant's Second Set of Interrogatories.  *Id.* at 8-9.  Citing FED. R. CIV. P. 26(b)(1), *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999), and *Kopacz v. Del. River and Bay Auth.*, 225 F.R.D. 494, 496 (D.N.J. 2004), Defendant argues that the scope of discovery is broad and "encompasses any matter that bears on or reasonably could lead to other matters that could bear on any issue that is or may be in the case".  *Id.* at 12-13. Similarly, Defendant maintains that Plaintiff "refused to provide detailed answers" to Interrogatory no. 1 of Defendant's Third Set of Interrogatories and suggested that "the answers could be found in documents produced in the litigation without identifying" same.  *Id.*  Citing *SEC v. Elfindepan*, 206 F.R.D. 574, 576 (M.D.N.C. 2002), *EEOC v. General Dynamics Corp.*, 999 F.2d 113, 118 (5th Cir. 1993), and *Govas v. Chalmers*, 965 F.2d 298, 302 (7th Cir. 1992), Defendant argues that "Plaintiff answered some interrogatories by referring generally to [its] document production instead of responding directly with the information requested".  *Id.* at 5.  Defendant maintains that Plaintiff "has attempted to distort the underlying facts involving...presentation of the issue of timing of notice of claims" and has "incorrectly...represent[ed] to the Court that compliance with the terms of the Agreements is a new defense".  *Id.* at 5-8.

**3.      Discovery should be extended.**

Finally, Defendant requests an extension of the discovery end date "to complete the discovery that is the subject of this Motion", ensure full compliance of the subpoena served on Everest, and "for the limited purpose of conducting further investigation into the circumstances surrounding...concealed underwriting information...including...deposition(s) of relevant witnesses".  *Id.* at 17.

7

**B.**    **Plaintiff's Arguments in Opposition to the Motion to Compel**

Procedurally, Plaintiff maintains that "the discovery Defendant seeks...relates to...claims and defenses Defendant has sought leave to [assert]" such that Defendant's requests "are outside...the permissible scope...of discovery" unless and until Defendant "is successful in making those claims part of this case".  *See* Pl.'s Opp'n Br. at 3.

1.    **Interrogatory no. 17(a)-(b) and Topic 2 of Defendant's 30(b)(6) notice are irrelevant and outside the scope of the pleadings.**

Substantively, Plaintiff notes that "Interrogatory 17(a) and (b) and Topic 2 of Defendant's 30(b)(6) deposition notice seek information relating to the timing and amount of the initial amount of setting of reserves and any subsequent modification of the reserves" and that same "relates exclusively to whether Plaintiff's claim reporting was in compliance with...the Agreements".  *Id.* at 3-4.  Plaintiff argues that Defendant "has never denied a claim on the basis that it was not reported in compliance with...[the Agreements and has not] sought to raise this as a defense to payment" until filing its motion to amend.  *Id.*  Plaintiff notes that it "offered to amend its interrogatory responses to provide the dates on which claims were reportable...if Defendant would agree to forego its request for a corporate designee on this Topic", but Defendant "declined that offer".  *Id.* at 4-5.

2.    **Interrogatory no. 18 and Topic 1 of Defendant's 30(b)(6) notice are irrelevant and outside the scope of the pleadings.**

Plaintiff notes that "Interrogatory 18 and Topic 1 of Defendant's 30(b)(6) deposition notice seek a breakdown of the amounts billed by Plaintiff for each claim including how the amount is apportioned among components of the claims, including medical, indemnity, expenses part of loss, loss adjustment expenses, and extra-contractual amounts".  *Id.* at 5-6.  Plaintiff argues that because "Defendant is liable to Plaintiff for all...categories of billings about which it asks" other than "extra- or non-contractual amounts", the information "sought by Defendant is neither relevant nor

reasonably likely to lead to discovery of admissible evidence" given that Plaintiff's witnesses "have testified that there were no extra- or non-contractual amounts billed...by Plaintiff to Defendant". *Id*. Plaintiff maintains that it "does not maintain...a breakdown into Defendant's categories of the amounts billed" such that in order "to derive the answer to this interrogatory it would have to review the claim documents produced by it, Defendant, and IOA Re, allocate the amounts billed, and calculate the amounts within each category". *Id*. at 6. Citing FED. R. CIV. P. 33(d)(1) and *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 63 (D.N.J. 1985), Plaintiff argues that "Defendant is in possession of the same documents that Plaintiff would use to conduct this analysis" and "the burden of obtaining the information would be substantially the same" for either party. *Id*. Plaintiff notes that it "identified and...attached to its interrogatory responses documents which show a breakdown into categories of the amounts billed on the claims" that "were prepared by Defendant and IOA Re during Defendant's audit of Plaintiff's claims files...prior to the filing of this suit" and that Defendant "offers no explanation...why it needs this information again or why it should be Plaintiff's burden...to calculate...". *Id*. at 7-8.

### 3. Interrogatory no. 16 and Topic 1 of Defendant's 30(b)(6) notice are irrelevant and outside the scope of the pleadings.

Plaintiff contends that it has fully responded to Interrogatory no. 16 by stating that the "reinsured attachment point is $500,000" and responded to Interrogatory no. 17 items (c) and (d) "by providing a chart listing each claim, the date upon which notice was first provided to IOA Re, and the bates number references for the notice documents". *Id*. at 8-9.

With respect to Defendant's 30(b)(6) deposition notice, Plaintiff notes that "Topic 2...requests a designee to testify on Plaintiff's claims handling". *Id*. at 10-11. Plaintiff contends that Defendant "has already deposed the two individuals...responsible for claims handling" in their individual capacities and "knew before it noticed these depositions that if Defendant intended to take

a 30(b)(6) deposition on claims handling, Plaintiff would designate" the same individuals and would oppose an attempt by Defendant to depose them twice. *Id*. Plaintiff maintains that Defendant "took extensive testimony" during those depositions "for a total of more than eleven (11) hours and obtain[ed] more than 600 pages of testimony" and argues that Defendant's request "to compel additional deposition testimony...is unreasonably cumulative, duplicative and burdensome" pursuant to FED. R. CIV. P. 26(b)(2)(c), *Novartis*, 203 F.R.D. at 163, *Johnson*, 269 F.R.D. at 415-16, and *State Farm*, 254 F.R.D. at 235-36. *Id*. at 10-12.

With respect to Defendant's 30(b)(6) deposition notice, Plaintiff notes that "Topic 3...[relates to] Plaintiff's demands for payment from Defendant". *Id*. at 13. Plaintiff maintains that in response to Interrogatory 18, it provided "a table setting forth...claimant name, claim number, amounts due from Defendant and reserves" and stated that "there have been no claims from Everest to Plaintiff that involved extra or non-contractual damages or legal fees and expenses attendant to the defense thereof and no portion of the amounts billed by Plaintiff to Defendant include extra or non-contractual damages or legal fees and expenses attendant to the defense thereof". *Id*. at 12-13. Plaintiff argues that it "produced Thomas Mauch to testify on the damages suffered and/or relief sought by Plaintiff against Defendant" and maintains that it "requested clarification" as to producing a 30(b)(6) witness related to Topic 3 because "Defendant...already deposed" Mr. Pawlowski. *Id*. at 13-14. Plaintiff "declines to produce Mr. Pawlowski for a second time to testify about the same documents and matters" because Defendant "could have, but...chose not to, notice Mr. Pawlowski as a 30(b)(6)" designee and because Topic 3 "is duplicative of Topic 4" to the extent it "refers to the billings from Plaintiff to Defendant that comprise Plaintiff's damages". *Id*.

### 4.    Discovery should not be extended.

Plaintiff argues that Defendant's request to extend discovery in order "to conduct additional

fact discovery regarding...[alleged] concealed underwriting information" relates "exclusively to claims...not part of this case and not before the Court" that are "neither relevant nor reasonably likely to lead to the discovery of admissible evidence". *Id*. at 14.

### C.   <u>Defendant's Arguments in Support of the Motion for Protective Order</u>

Preliminarily, Defendant states that it has withheld certain documents as set forth in its Amended Privilege Log on the basis of work product privilege, attorney-client privilege, and the common interest doctrine and requests "that the Court grant it protection from producing" these items although it is willing to "tender to the Court the documents for an *in camera* inspection". *See* Def.'s Br. at 1-2. Defendant, noting that "pursuant to a contract between IOA Re and Defendant, IOA Re was granted authority to enter into certain types of reinsurance contracts on Defendant's behalf", maintains that "IOA Re, as Defendant's agent with authority to bind risk on behalf of Defendant, entered into the Treaties with Plaintiff" and "was responsible for managing all respects of the Treaty on Defendant's behalf from contract formation to payment of claims". *Id*. at 2-3. Specifically, Defendant states that IOA Re's responsibilities included "underwriting and placement", "receiving premiums on Defendant's [behalf]", "monitor[ing] and maintain[ing] records for the receipt of...premium payments", maintaining "all records of transactions with Plaintiff" and making "payment of amount[s] due to Plaintiff", calculating "amounts due to Plaintiff without Defendant's involvement with either the calculations or payments prior to the time Plaintiff filed the lawsuit against Defendant", and calculating and setting "reserves on behalf of Defendant". *Id*. Defendant contends that "Plaintiff has...treated Defendant and IOA Re as if they were a single entity" until this dispute, noting that "Plaintiff made demand upon IOA Re to make payment of the sums it seeks in the litigation", "Plaintiff's discovery effort has been primarily aimed at IOA Re rather than Defendant", and "Plaintiff noticed five current and former IOA Re employees for depositions" while

only two employees of Defendant.  *Id*. at 3-4.  Further, Defendant maintains that it agreed with IOA Re both orally and in writing "that they had a common interest in defending against Plaintiff's claims" and argues that Defendant "must...have free access to the knowledge, interpretations, opinions, and records of its agent IOA Re in order to prepare...for a trial of this matter...[such] that access must be without the burden of disclosure to Plaintiff".  *Id*. at 4.  Defendant argues that it enjoys a "special agency relationship" with IOA Re such that Defendant is entitled "to protection for all of the items listed in the Amended Privilege Log".  *Id*. at 22.

### 1.    All of the subject documents are protected from disclosure under the work product doctrine.

Defendant notes that it has "asserted the work product protection for each and every one of the documents listed in the privilege log" because certain items "contain work product of [its] attorneys" while other items are "the work product of IOA Re which includes the work product of Mr. Charles Leasure, attorney and agent of IOA Re, [Defendant's] agent's agent".  *Id*. at 4-5.  Citing FED. R. CIV. P. 26(b)(3)(A), *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966-67 (3d Cir. 1988), *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989), and *Maertin v. Armstrong World Indu., Inc.*, 172 F.R.D. 143, 148 (D.N.J. 1997), Defendant maintains that "both categories of documents are entitled to work product protection" and argues that "Rule 26 provides a qualified immunity that protects a party from producing or disclosing (1) work product (2) prepared in anticipation of litigation (3) by a party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)".  *Id*. at 4-6.  Citing *The Times of Trenton Publishing Corp. v. Public Utility Service Corp.*, 2005 U.S. Dist. LEXIS 34624, at *12 (D.N.J. 2005) and *United Coal*, Defendant maintains that "it is well established that the correct question is whether the material was created by or for a party or that party's representative", that "federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was

prepared by or for a party's insurer or agents of the insurer", and that "the Third Circuit...[has cited] with approval numerous federal decisions protecting communications made by agents of insurers". *Id*. at 6-7.  Citing *Deshields v. Mt. Laurel Resort & Spa*, 2010 U.S. Dist. LEXIS 116522, at *6-7 (M.D. Pa. 2010), Defendant states that "IOA Re was (and is)" its agent and notes that Plaintiff "has not attempted to show that the materials are otherwise discoverable under FED. R. CIV. P. 26(b)(1)...[such] that [it] has substantial need for the materials and cannot, without undue hardship, obtain their substantial equivalent by other means". *Id*. at 7-8. Further, Defendant notes that the "the Amended Privilege Log includes both opinion and ordinary work product". *Id*. at 9-10.  Defendant argues that, based in part on the deposition testimony of Edward Pawlowski, Plaintiff's Vice President, "there could be no doubt that litigation was anticipated by April 3, 2009" and that "all of the documents listed in the Privilege Log concern this lawsuit and the claims alleged by Plaintiff or defenses and/or claims available to Defendant" including the "mental impressions of Defendant and/or its agents or representatives". *Id*.  Finally, noting that it has asserted that "work product protection applies to...(1) work product prepared by or exchanged between Defendants and...IOA Re, (2) work product prepared by or exchanged between Defendant and its attorneys, (3) work product prepared by or exchanged between the agents and representatives of Defendant and IOA Re, including attorney representatives, and (4) work product prepared by or exchanged among Defendant, IOA Re, Defendant's attorney representatives and IOA Re's attorney representatives", Defendant maintains that "all of the aforementioned consist of the creation, exchange and/or communication of work product between Defendant and its various agents or representatives". *Id*. at 10.

### 2.  Documents withheld on the basis of attorney-client privilege should be protected from disclosure.

Citing FED. R. EVID. 501, *In re Grand Jury Investigation*, 918 F.2d 374, 379 n.6 (3d Cir.

1990), and *Spectrum Systems Intern. Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377 (N.Y. 1991), Defendant maintains that New York law guides the Court's inquiry with respect to the application of the attorney-client privilege. *Id*. at 13-14.  Defendant argues that "attorney-client communications are afforded extensive protection under New York Law" to the extent those communications are "made for the purpose of facilitating the rendition of legal advice or service in the course of a professional relationship".  *Id*.  Noting that it included in its Amended Privilege Log "items that are communications with its attorneys'...which pertain to the instant dispute with Plaintiff", Defendant contends that these documents should be protected from disclosure.  *Id*.

### 3. Documents withheld on the basis of the common interest doctrine should be protected from disclosure.

Citing FED. R. EVID. 501, *In re Grand Jury Investigation*, 918 F.2d 374, 379 n.6 (3d Cir. 1990), *In re Megan-Racine Associates, Inc.*, 189 B.R. 562 (Bankr. N.D.N.Y. 1995), *Parsi v. Leppard*, 660 N.Y.S.2d 951, 960 (N.Y. Sup. Ct. 1997), and *Aetna Casualty & Surety Co. v. Certain Underwriters at Lloyd's London*, 676 N.Y.S.2d 727 (Sup.Ct. Ny.Y. Co. 1998), Defendant maintains that New York law guides the Court's inquiry with respect to the application of the common interest doctrine.  *Id*. at 14-18.  Defendant argues that "the common interest doctrine is an extension of the attorney-client privilege and the work product protection", that this privilege "stands as an exception to the traditional rule that the presence of a third party, ...[who is] not an agent or employee of counsel, at a communication between counsel and a client is sufficient to deprive the communication of the confidentiality which is one of the pillars of the privilege", and that in order to determine whether material is protected under this privilege the Court must determine "(1) whether the parties are entitled to assert the doctrine and (2) whether the material at issue is properly subject to a privilege claim".  *Id*.  Defendant contends that "the relationship between [it] and IOA Re, their alignment and interests in this lawsuit, and their conduct after Plaintiff threatened and then brought

14

this lawsuit, all demonstrate Defendant's and IOA Re's common interest in marshaling a joint defense in response to Plaintiff's claims and the desire of Defendant and IOA Re to keep communications concerning their litigation thoughts and plans confidential". *Id*. at 18-19. Citing *American Re-Insurance Co. v. United States Fidelity & Guaranty Co.*, 837 N.Y.S.2d 616 (N.Y. App. 2007), *In re Grand Jury Subpoenas, 89-3*, 902 F.2d 244, 249 (4th Cir. 1990), *In re Megan-Racine*, 189 B.R. at 571, *Cooley v. Strickland*, 2010 U.S. Dist. LEXIS 92856, at *28-29 (S.D. Oh. 2010), *Gucci America, Inc. v. Gucci*, 2008 U.S. Dist. LEXIS 101760, at *2-3 (S.D.N.Y. 2008) and *In re Bevill, Bresler & Schulman Asset Mgmt.*, 805 F.2d 120, 126 (3d Cir. 1986), Defendant maintains that "[it] and IOA Re have common interests such that their communications concerning this litigation may be protected", that Defendant and IOA Re "explicitly intended to enter into a common effort to defend...this lawsuit and intended that their communications be confidential", and that "if...information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication". *Id*. at 19-21. Noting that it included in its Amended Privilege Log items that are communications with attorneys and IOA Re which pertain to the instant dispute with Plaintiff, and Defendant contends that these documents should be protected from disclosure. *Id*.

### D.   Plaintiff's Arguments in Opposition to the Motion for Protective Order

Plaintiff maintains that Defendant "has not met [its] burden" with respect to 32 documents designated as privileged and requests that the Court "either order their production or conduct an *in camera* review...to determine the propriety of Defendant's assertions of privilege". *See* Pl.'s Opp'n Br. at 1. Citing FED. R. CIV. P. 25(b)(5), *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 1994 WL 6883, at *2 (E.D. Pa. 1994), and *G-69 v. Degnan*, 130 F.R.D. 326, 331 (D.N.J. 1990), Plaintiff argues that the party withholding otherwise discoverable information "must make the claim

and must describe the nature of the documents...in a manner that...will enable other parties to assess the claim" including provision of a "privilege log". *Id*. at 1-2.  Plaintiff "challenges the assertion of privilege...with respect to three categories of documents" including "communications between employees of IOA Re and employees of Defendant in which IOA Re's counsel is identified as a participant or a cc", "communications between employees of IOA Re and employees of Defendant in which Defendant's counsel is identified as a participant", and "communications between employees of IOA Re and employees of Defendant in which no lawyer is identified as a participant or cc". *Id*. at 3.

> **1.     Amended Privilege Log entry nos. 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, and 38 should be produced or subjected to an *in camera* review because documents between employees of IOA Re and Defendant on which IOA Re's counsel is included or copied are not privileged.**

Plaintiff argues that with respect to "documents between employees of IOA Re and Defendant on which IOA Re's counsel is included or copied", "the assertion of the attorney-client privilege must fail because...(1) there is no attorney-client privilege between Defendant and IOA Re's outside counsel, (2) the common interest doctrine does not apply unless there is an underlying privilege nor does it preclude a determination that the privilege has been waived because the doctrine is limited to documents shared among counsel, and (3) the description provided does not establish that the documents contain legal advice that warrants assertion of the privilege even if applicable". *Id*. at 4-5.  Similarly, Plaintiff argues that the assertion of work product privilege must fail because "the description provided does not establish that the documents were actually prepared in anticipation of litigation as opposed to in the ordinary course of responding to Plaintiff's request for payment".  *Id*. Citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979), *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), and *Cooper Health Sys. v. Virtua*

16

*Health, Inc.*, 259 F.R.D. 208, 214 (D.N.J. 2009), Plaintiff maintains that the "common-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others...[but] applies only to communications shared with the attorney of the member of the community of interest". *Id*. at 6-7. Plaintiff argues that "there is no attorney-client relationship between [IOA Re's counsel and Defendant]" and, even if there was, "any privilege that may have existed for communications between IOA Re and its counsel was waived by the disclosure of those communications to a third party" because "the common-interest privilege is only an exception to the rule that disclosure waives the attorney-client privilege when attorneys, not clients, decide to share information in order to coordinate legal strategies". *Id*. Citing *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 164 (D.N.J. 2008), Plaintiff maintains that "the mere fact that a lawyer is copied on or receives a communication is insufficient to make a communication privileged". *Id*. at 7. Plaintiff argues that Defendant's "description of the subject matter...[of the documents] is insufficient to establish that they in fact constitute communications protected by the attorney-client privilege" and that Defendant has failed to satisfy its burden under the factors set forth in *In re Human Tissue Prods*. *Id*. Citing FED. R. CIV. P. 26(b)(3)(A), *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183-84 (D.N.J. 2003), and *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990), Plaintiff notes that the two-part test for determining whether work product protection applies includes a determination of "whether litigation could reasonably have been anticipated" and "whether the documents were prepared primarily for the purpose of litigation". *Id*. at 8-9. Plaintiff argues that "Defendants fail to explain how" documents involving employees and counsel of IOA Re and Defendant "could constitute Defendant's work product". *Id*.

17

2. **Amended Privilege Log entry nos. 19, 20, 21, 22, 23, 24, 25, and 26 should be produced or subjected to an *in camera* review because documents between employees of IOA Re and Defendant on which Defendant's counsel is listed as a recipient are not privileged.**

Plaintiff argues that with respect to "documents between employees of IOA Re and employees of Defendant on which Defendant's counsel is listed as a recipient", "the assertion of the attorney-client privilege must fail because...(1) any privilege that might have attached...is waived by...disclosure to IOA Re, (2) the common interest doctrine does not preclude a determination that the privilege has been waived since the doctrine is limited to documents shared among counsel, and (3) the description provided does not establish that the documents contain legal advice that warrants assertion of the privilege even if applicable". *Id*. at 9-10. Further, Plaintiff contends that the assertion of work product privilege must fail because "the description provided does not establish that the documents were actually prepared in anticipation of litigation as opposed to in the ordinary course of responding to Plaintiff's request for payment". *Id*.

3. **Amended Privilege Log entry nos. 1, 2, and 27 should be produced or subjected to an *in camera* review because documents between employees of IOA Re and Defendant on which no lawyer was an author or recipient are not privileged.**

Plaintiff argues that with respect to "documents between employees of IOA Re and Defendant for which no lawyer was an author or recipient", specifically Amended Privilege Log entry no. 27, "it is clear that the assertion of attorney-client privilege is meritless because there is no communication between a lawyer and his or her client alleged". *Id*. at 10-11. Further, Plaintiff contends that "the common interest doctrine does not preclude a determination that any applicable protection has been waived since the doctrine is limited to documents shared among counsel" nor does "the description provided...establish that the documents were actually prepared in anticipation of litigation as opposed to in the ordinary course of responding to Plaintiff's request for payment". *Id*.

18

## III.    DISCUSSION

### A.    Legal Standards

#### 1.    Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence".  Courts refuse to order discovery if the information being sought is (1) irrelevant to the claim or (2) protected by a recognized privilege. *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).  The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court.  *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996).  However, "courts have construed [Rule 26] liberally, creating a broad range for discovery which would encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case". *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *see also Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J. 1994); *Tele-Radio Systems, Ltd. v. De Forest Electronics, Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).  "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial".  *Id.*; *see also Caver*, 192 F.R.D. at 159.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation...[and] either party may compel the other to disgorge whatever facts he has in his possession".  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  "Whether certain documents are relevant is viewed in light of the allegations of the complaint, not as to evidentiary admissibility".  *Id.*; *see also Scouler v. Craig*, 116 F.R.D. 494,

496 (D.N.J. 1987).  Importantly, "the party resisting discovery has the burden of clarifying and

explaining its objections to provide support therefor".  *Tele-Radio*, 92 F.R.D. at 375; *see also Gulf*

*Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979); *Robinson v. Magovern*, 83

F.R.D. 79, 85 (E.D. Pa. 1979).

### 2.      Interrogatories to Parties

Pursuant to Fed. R. Civ. P. 33,

> ...(a)(2) Scope.  An interrogatory may relate to any matter that may be
> inquired into under Rule 26(b).  An interrogatory is not objectionable
> merely because it asks for an opinion or contention that relates to fact
> or the application of law to fact, but the court may order that the
> interrogatory need not be answered until designated discovery is
> complete, or until a pretrial conference or some other time.
>
> ...(b)(3) Answering Each Interrogatory.  Each interrogatory must, to
> the extent it is not objected to, be answered separately and fully in
> writing under oath.
>
> (4) Objections.  The grounds for objecting to an interrogatory must be
> stated with specificity.  Any ground not stated in a timely objection
> is waived unless the court, for good cause, excuses the failure.
>
> ...(d) Option to Produce Business Records.  If the answer to an
> interrogatory may be determined by examining, auditing, compiling,
> abstracting, or summarizing a party's business records (including
> electronically stored information), and if the burden of deriving or
> ascertaining the answer will be substantially the same for either party,
> the responding party may answer by:
>
>> (1) specifying the records that must be reviewed, in sufficient
>> detail to enable the interrogating party to locate and identify
>> them as readily as the responding party could; and
>>
>> (2) giving the interrogating party a reasonable opportunity to
>> examine and audit the records and to make copies,
>> compilations, abstracts, or summaries.

"The more progressive approach to interrogatories dealing with legal matters is to view them in the

factual context within which they arise".  *Microtron Corp. v. Minnesota Mining & Mfg. Co.*, 269 F.

Supp. 22, 25 (D.N.J. 1967); *see also Singer Manufacturing Co. v. Brother International Co.*, 191

F. Supp. 322 (S.D.N.Y. 1960).  "If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer".  *Id*.; *see also* 4 MOORE'S FEDERAL PRACTICE, 2d Ed. 2534; *Gagen v. Northam Warren Corp*., 15 F.R.D. 44 (S.D.N.Y. 1953).

### 3.    Requests for Production of Documents

Pursuant to FED. R. CIV. P. 34,

(a) In General.  A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

(B) any designated tangible things; ...

...(b)(2)    ...(B) Responding to Each Item.  For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

(C) Objections.  An objection to part of a request must specify the part and permit inspection of the rest.

(D) Responding to a Request for Production of Electronically Stored Information.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form – or if no form was specified in the request – the party must state the form or forms it intends to use.

(E) Producing the Documents or Electronically Stored

Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

> (iii) A party need not produce the same electronically stored information in more than one form.

Pursuant to *Armor Screen Corp. v. Storm Catcher, Inc.*, 2009 WL 291160, at *5, 2009 U.S. Dist.

LEXIS 63538, *7-9 (S.D. Fla. 2009), the Court notes

> the need to balance Rule 34(b)(2)(E)(i)'s legitimate purpose of alleviating a responding party's burden of production while reasonably assuring a requesting party's ability to obtain discoverable documents under Rule 26(b)(1).  Rule 34 is generally designed to facilitate discovery of relevant information by preventing attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents.  A producing party fails to meet its Rule 34 obligations by producing a mass of undifferentiated documents for the responding party to inspect.  While Rule 34 does not obligate a producing party to *per se* organize and label usable documents for the requesting party's convenience, a party exercising Rule 34's option to produce records as they are kept in the usual course of business should organize the documents in such a manner that the requesting party may obtain, with reasonable effort, the documents responsive to their requests. ...The standard this Court will use in determining what is required will be whether the production allows the requesting party to reasonably determine what documents are responsive to its requests.  If it does, the production complies with Rule 34(b)(2)(E)(I).  If it does not, then the production does not comply.

*See also Williams v. Taser Int'l, Inc.*, 2006 WL 1835437, at *7 (N.D. Ga. 2006).

### 4.      Deposition of a Corporate Designee

Pursuant to FED. R. CIV. P. 30(b)(6),

> In its notice or subpoena, a party may name as the deponent a public
> or private corporation, a partnership, an association, a governmental
> agency, or other entity and must describe with reasonable particularity
> the matters for examination.  The named organization must then
> designate one or more officers, directors, or managing agents, or
> designate other persons who consent to testify on its behalf; and it
> may set out the matters on which each person designated will testify.
> A subpoena must advise a nonparty organization of its duty to make
> this designation.  The persons designated must testify about
> information known or reasonably available to the organization.  This
> paragraph (6) does not preclude a deposition by any other procedure
> allowed by these rules.

"Rule 30(b)(6) places the burden upon the deponent to 'make a conscientious good faith endeavor to designate the persons having knowledge of the matters sought...and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed...as to the relevant subject matters".  *Costa v. County of Burlington*, 254 F.R.D. 187, 189 (D.N.J. 2008)(*quoting Harris v. New Jersey*, 259 F.R.D. 89, 92 (D.N.J. 2007)).  "The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees, or other sources to obtain responsive information".  *Harris*, 259 F.R.D. at 92-93.  "While the rule may not require absolute perfection in preparation – it speaks after all of matters known or reasonably available to the organization – it nevertheless certainly requires a good faith effort on the part of the designate to find out the relevant facts – to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories".  *Wilson v. Lakner*, 228 F.R.D. 524, 528-29 (D. Md. 2005).  Pursuant to FED. R. CIV. P. 37(d)(1)(A), "the court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or

23

31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition...". Importantly, "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), 'producing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)". *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000)(*quoting United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C. 1996)).

Notably, in *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 162-63 (D. Del. 2001), the Court denied Novartis' motion to compel a 30(b)(6) deposition where *Abbott Labs*. agreed to be bound by the testimony previously provided by an individual, who was deposed in his individual capacity, who would have been the designee for a 30(b)(6) deposition. In *Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415-16 (D. Del. 2010), the Court granted – in part – Geico's motion for protective order as to a 30(b)(6) deposition notice based upon the fact that Geico previously "produced thousands of documents" and the plaintiff had "already deposed witnesses" with respect to the particular topic, finding that plaintiff's 30(b)(6) notice was "duplicative and unduly burdensome". In *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-36 (E.D. Pa. 2008), the Court granted New Horizont's motion for protective order as to a 30(b)(6) deposition notice based upon the fact that New Horizont failed to provide good cause as to why the subject topics "were not noticed at the previous two Rule 30(b)(6) depositions". *See also* FED. R. CIV. P. 26(b)(2)(C).

### 5.   Protective Order

Pursuant to FED. R. CIV. P. 26(c)(1), "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)   forbidding the disclosure or discovery;

(B)   specifying terms, including time and place, for the

disclosure or discovery;

    (C)    prescribing a discovery method other than the one selected by the party seeking discovery;

    (D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

    (E)    designating the persons who may be present while the discovery is conducted;

    (F)    requiring that a deposition be sealed and opened only on court order;

    (G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

    (H)    requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

However, "if a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery". FED. R. CIV. P. 26(c)(2).

"Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure" and "must be shown with specificity". *Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 415 (D. Del. 2010); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "In determining whether there is good cause, courts will balance the party's need for the information against the resulting injury of disclosure". *Id.* Further, "the court must limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or the burden or expense of the proposed discovery outweighs its likely benefit". *Id.*; *see also* FED. R. CIV. P. 26(b)(2)©.

### 6.   Applicable Law

Pursuant to FED. R. EVID. 501,

> Except as otherwise required by the Constitution of the United States
> or provided by Act of Congress or in rules prescribed by the Supreme
> Court pursuant to statutory authority, the privilege of a witness,
> person, government, State, or political subdivision thereof shall be
> governed by the principles of the common law as they may be
> interpreted by the courts of the United States in the light of reason
> and experience.  However, in civil actions and proceedings, with
> respect to an element of a claim or defense as to which State law
> supplies the rule of decision, the privilege of a witness, person,
> government, State, or political subdivision thereof shall be
> determined in accordance with State law.

Thus, "under this rule, in federal question cases the federal common law of privileges applies...[and] where state law provides the rule of decision, ...state privilege law will govern". *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 103 (3d Cir. 1982).  However, it is obvious that "applying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable" and "one rule or the other must govern".  *Id.* at 104.  "When there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule".  *Id.*

### 7.   Work-Product Privilege

"Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3)".  *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).  A party may not ordinarily "discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without undue hardship, [to] obtain their substantial

equivalent by other means". FED. R. CIV. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation". FED. R. CIV. P. 26(b)(3)(B); *see also Quinn Construction, Inc. v. Skanska USA Building, Inc*., 263 F.R.D. 190, 193 (E.D. Pa. 2009). "The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litig*., 343 F.3d 658, 661-62 (3d Cir. 2003)(*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947): "In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. ...This work is reflected, of course, in interviews, statements, memoranda, correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways." Importantly, "waiver of work-product protection occurs only when a disclosure enables an adversary to gain access to the information" and the "burden of establishing waiver of the work-product doctrine falls...on the party seeking to establish waiver". *Sealed Air*, 253 F.R.D. at 311; *see also Westinghouse Elec. Corp. v. Republic of Phil*., 951 F.2d 1414, 1428 (3d Cir. 1991); *Maldonado v. New Jersey*, 225 F.R.D. 120, 131-32 (D.N.J. 2004).

The work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation. "Work product can be produced upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *In re Cendant*, 343 F.3d at 663. Even if the party seeking discovery of information

otherwise protected by the work product doctrine has made the requisite showing, "courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents." *Id.* Thus, there are "two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery' and requires a heightened showing of extraordinary circumstances". *Id.* at 663-64; *see also In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *4 (D.N.J. 1993); *Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, 2005 U.S. Dist. LEXIS 34624, at *12 (D.N.J. 2005).

"Federal courts have consistently ruled that the work product doctrine is not inapplicable merely because the material was prepared by or for a party's insurer or agents of the insurer". *United Coal*, 839 F.2d at 966; *see also Railroad Salvage of Conn. Inc. v. Japan Freight Consolidators (U.S.A.), Inc.*, 97 F.R.D. 37, 41 (E.D.N.Y. 1983), *aff'd*, 779 F.2d 38 (2d Cir. 1985); *Home Ins. Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101 (N.D. Ga. 1977); *Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 772-73 (M.D. Pa. 1985); *Hoffman v. Owens-Illinois Glass Co.*, 107 F.R.D. 793, 794 (D. Mass. 1985); *Briggs & Stratton Corp. v. Concrete Sales & Servs.*, 174 F.R.D. 506, 508 (M.D. Ga. 1997).

Importantly, "the party asserting work product protection bears the burden to show the doctrine applies". *Sealed Air*, 253 F.R.D. at 306; *see also Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). The Third Circuit has adopted a "two part test for ascertaining whether the documents or things at issue should be protected under the work-product doctrine". *Id.*; *see also In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Muse-Freeman v.*

28

*Bhatti*, 2008 WL 2165147, at *1 (D.N.J. 2008); *Paris v. R.P. Scherer Corp*., 2006 WL 1982876, at

*2 (D.N.J. 2006). The first inquiry is "the reasonable anticipation test, which requires that the court

determine whether litigation could reasonably have been anticipated...[with the] relevant inquiry

[being] whether in light of the nature of the document and the factual situation in the particular case,

the document can fairly be said to have been prepared or obtained because of the prospect of

litigation". *Id*.; *see also In re Gabapentin*, 214 F.R.D. at 183; *Maertin v. Armstrong World Indus*.,

172 F.R.D. 143, 148 (D.N.J. 1997); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252,

1258 (3d Cir. 1993); *Rockwell Int'l*, 897 F.2d at 1266. "Although the litigation need not be

imminent, there must be an identifiable specific claim of impending litigation". *Id*.; *see also*

*Rockwell Int'l*, 897 F.2d at 1266; *Maertin*, 172 F.R.D. at 148; *Leonen*, 135 F.R.D. at 97. The second

inquiry "is whether the documents were prepared primarily for the purpose of litigation, ...as

documents prepared for other purposes that prove useful in subsequent litigation are not attorney

work-product". *Id*. at 307; *see also Paris*, 2006 WL 1982876, at *2; *In re Gabapentin*, 214 F.R.D.

at 184. "Documents created in the ordinary course of business, even if useful in subsequent

litigation, are not protected by the work-product doctrine". *Id*.; *see also Rockwell Int'l*, 897 F.2d at

1265-66. Thus, "even where the reasonable anticipation of litigation is established, whether the

document comes within the purview of the work-product doctrine still depends primarily on the

reason or purpose for the document's production". *Id*.; *In re Gabapentin*, 214 F.R.D. at 184.

### 8. Attorney-Client Privilege

FED. R. EVID. 501 provides that evidentiary privileges are "governed by the principles of the

common law as they may be interpreted by the courts of the United States in light of reason and

experience". "Rule 501, as it applies to federal civil cases, incorporates the doctrine of *Erie R.R. Co.*

*v. Tompkins*, 304 U.S. 64 (1938), and requires deference to any applicable state law governing

privileges". *In re Grand Jury Investigation*, 918 F.2d 374, 379 n.6 (3d Cir. 1990). As such, "privileges are to be determined in accordance with state law in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision". *Id*. The Court notes that federal jurisdiction in this lawsuit is based on diversity of citizenship and that the Agreements contain a choice of law provision specifying New York law for substantive issues. *See* Def.'s Br. at 13; *see also* Pl.'s Complaint at 3. Thus, New York law is controlling with respect to the attorney-client privilege.

"The attorney-client privilege, the oldest among common-law evidentiary privileges, fosters the open dialogue between lawyer and client that is deemed essential to effective representation". *Spectrum Sys. Int'l Corp v. Chem. Bank*, 78 N.Y.2d 371, 377 (N.Y. 1991); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "A century ago this Court referred to the attorney-client privilege statute as a mere re-enactment of the common-law rule; reliance on the common law continues to this day". *Id*. "CPLR 4503(a) states that a privilege exists for confidential communications made between attorney and client in the course of professional employment, and CPLR 3101(b) vests privileged matter with absolute immunity". *Id*. "Although typically arising in the context of a client's communication to an attorney, the privilege extends as well to communications from attorney to client...[but] is of course limited to communications – not underlying facts". *Id*. "In order for the privilege to apply, the communication from attorney to client must be made for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship...[and] must be primarily or predominantly of a legal character". *Id*. "Whether a particular document is or is not protected is necessarily a fact-specific determination, most often requiring an *in camera* review". *Id*.

Additionally, while not controlling in this instance as New York attorney-client privilege may

30

be broader, the Court is mindful of Third Circuit precedent.  The attorney client privilege applies as follows:

> (1) the asserted holder . . . is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of a bar of a court . . . and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, . . .; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (*quoting United States v. United Shoe Machinery Corp.*, 80 F. Supp. 357, 358-59 (D. Mass. 1950)); *see also La. Mun. Police Emples. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008).

Communications between an attorney and client are protected by the attorney-client privilege with the purpose of this privilege being to promote frank discussions between attorneys and their clients.  *Upjohn v. United States*, 449 U.S. 383, 389 (1981); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976).  "Courts should be cautious in their application of the privilege, mindful that 'it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege'".  *Sealed Air Corp.*, 253 F.R.D. at 305 (*quoting Fisher*, 425 U.S. at 403).  The facts underlying any given communication remain discoverable, no matter the circumstance.  *Id.* at 305; *see also Upjohn*, 449 U.S. at 395-96.  The attorney-client privilege can be waived if privileged information is communicated to outside parties. *U.S. v. Rockwell International*, 897 F.2d 1255, 1265 (3d Cir. 1990).  Further, because the privilege may be employed to obstruct the search for truth, the it is not absolute and care must be taken to insure that it is not abused.  *United*

*Jersey Bank v. Wolosoff*, 196 N.J. Super 553, 561-62 (App. Div. 1984).

Importantly, the "party asserting the attorney-client privilege bears the burden to show that it applies". *Sealed Air Corp.*, 253 F.R.D. at 305; *see also In re Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979); *Glaxo, Inc. v. Novopharm, Ltd.*, 148 F.R.D. 535, 538 (E.D.N.C. 1993); *Fischer v. United States*, 425 U.S. 391 (1976). The party resisting disclosure must state its privilege claim expressly by "describ[ing] the nature of the documents, communications, or things not produced." FED. R. CIV. P. 26(b)(5). Failure to identify with specificity the recipients of the information alleged to be privileged does not necessarily void the assertion of the privilege. However, such failure requires enhanced scrutiny to ensure that the privilege was not waived by disseminating the information to those who did not require access to it. *See Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Pa. 2005).

The attorney-client privilege extends to corporations but its administration presents special problems. *Sealed Air Corp.*, 253 F.R.D. at 305; *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986); *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985); *Wolosoff*, 196 N.J. Super at 562; *Macey v. Rollins Environmental Services*, 179 N.J. Super 535, 540 (App. Div. 1981). The "necessity for full and open disclosure between corporate employees and in-house counsel...demands that all confidential communications be exempt from discovery." *Wolosoff*, 196 N.J. Super at 562. However, the privilege is limited to "confidential communications made within the context of the strict relation of attorney and client." *Id*. "Communications which relate to business rather than legal matters do not fall within the protection of the privilege" (*Leonen v. Johns-Mansville*, 135 F.R.D. 94, 98 (D.N.J. 1990)), and, therefore, "the general rule is 'while legal advice given to a client by an attorney is protected by the privilege, business advice generally is not'" (*Sealed Air Corp.*, 253 F.R.D. at 305 (*quoting In re Nat'l*

*Smelting of New Jersey, Inc. Bondholders' Litig.*, 1989 U.S. Dist. LEXIS 16962, at *18 (D.N.J. 1989)).  *See also Coleman v. Am. Broad Co.*, 106 F.R.D. 201, 205 (D.D.C. 1985); *Claude P. Bamberger Int'l Inc. v. Rohm & Haas Co.*, 1997 WL 33786546, at *2 (D.N.J. 1997); *United States v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1978).

Given that "legal advice is often intimately intertwined with and difficult to distinguish from business advice" (*Sealed Air Corp.*, 253 F.R.D. at 306 (*citing Leonen*, 135 F.R.D. at 88-89); *see also Sedco Int'l SA v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)), and "because it is often too difficult, impractical and unrealistic to compartmentalize whether certain advice given to a client is legal in nature or business in nature in the context of a complicated....transaction" (*Sealed Air Corp.*, 253 F.R.D. at 306), "the policy behind the attorney-client privilege is best upheld where the attorney-client relationship is predominantly for the purpose of rendering legal services" (*Sealed Air Corp.*, 253 F.R.D. at 306 (*citing In re Nat'l Smelting*, 1989 U.S. Dist. LEXIS 16962, at *21-22)). Consequently, "the proper inquiry is focused on whether the communication is designed to meet problems which can fairly be characterized as predominantly legal" (*Sealed Air Corp.*, 253 F.R.D. at 306 (*citing Leonen*, 135 F.R.D. at 99); *see also Bamberger*, 1997 WL 33768546, at *2) and the party claiming privilege "should demonstrate that the communication would not have been made but for the client's need for legal advice or services" (*Sealed Air Corp.*, 253 F.R.D. at 306 (*citing Leonen*, 135 F.R.D. at 99)).

Generally, when a party discloses privileged information to a third party, the privilege is extinguished, and the document is discoverable. *See In re Teleglobe Commc'n Corp.*, 493 F.3d 345, 364 (3d Cir. 2007).  "Although voluntary disclosure of attorney-client communications to a third-party ordinarily waives the privilege, the privilege will not be waived if the disclosure was to an agent whose services are necessary for effective representation of the client's interests".  *Sealed Air*

33

*Corp.*, 253 F.R.D. at 311; *see also Cellco P'ship v. Certain Underwriters of Lloyd's London*, 2006 U.S. Dist. LEXIS 28877 (2006).  Importantly, "the party claiming a third-party as an agent bears the burden to show the privilege has not been waived".  *Id.*  The asserting party must demonstrate that "the third party's involvement must be necessary to the lawyer's provision of legal advice", meaning "the agent must evaluate the information and in a sense translate it into understandable terms for the non-expert attorney".  *Id.* at 312.  Further, "the communications between an attorney and a third-party are not protected from disclosure simply because the communications later become beneficial to the representation of the client".  *Id.*

### 9.    Common-Interest Doctrine

For those reasons previously stated, New York law is controlling with respect to the common interest doctrine.  "While there is no New York statute that recognizes the common interest privilege as a distinct privilege, most commentators and courts view it as an extension of the attorney-client privilege or work-product doctrine".  *In re Megan-Racine Associates, Inc.*, 189 B.R. 562, 570 (Bankr. N.D.N.Y. 1995).  "The paucity of decisional law...does not prevent...[the] Court from prophesying how New York courts would apply the joint-defense privilege...[as] courts often rely on federal precedents where state courts have recognized the privilege but there are no decisions on point".  *Id.* at 571.  "Although the joint-defense privilege is developed within the context of criminal cases, its purpose is to encourage interparty communications such that the parties receive effective legal representation as well as to facilitate a just determination of the case...[and] as these purposes are common to civil and criminal cases, the Court does not find it anomalous to extend New York's recognition of the joint-defense privilege to civil cases".  *Id.*

"Generally, when a communication between a client and an attorney occurs in the presence of third parties, the attorney-client privilege is waived...[and,] similarly, the general rule for the

work-product doctrine is that it is deemed waived when an attorney reveals his materials prepared in anticipation of litigation to third parties". *Id.*; *see also AMBAC Indemnity Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 208 (1991); *In re Crazy Eddie Securities Litigation*, 131 F.R.D. 374, 379 (E.D.N.Y. 1990). "The joint-defense privilege acts as an exception to these general waiver rules in order to facilitate cooperative efforts among parties who share common interests...[but] can only exist where is an applicable underlying privilege such as the attorney-client privilege or work-product doctrine". *Id.*; *see also In re Grand Jury Subpoena Duces Tecum Dated November 26, 1974*, 406 F. Supp. 381, 387-88 (S.D.N.Y. 1975). Notably, "the joint-defense privilege is only applicable where the party asserting it can demonstrate an agreement between the parties privy to the communication that such communication will be kept confidential...[though] the requisite agreement of confidentiality...is inferable from the circumstances". *Id.* at 571-72; *see also In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir. 1986); *In re Grand Jury Subpoena*, 406 F. Supp. at 386; *People v. Fentress*, 425 N.Y.S.2d 485 (1980). "In *Hunydee v. Unied States*, 355 F.2d 183 (9th Cir. 1965), the joint-defense privilege was interpreted so as to shield statements made in furtherance of a common defense by a defendant in front of his attorney, a codefendant and the codefendant's attorney". *Id.* at 572. "Courts and commentators have suggested that the *Hunydee* reasoning can be extended such that even inter-client communications in the presence of their attorneys are protected". *Id.*; *In re Grand Jury Subpoena*, 406 F. Supp. at 388. "The joint-defense privilege, like the attorney-client privilege in New York, does not extend to communications made to representatives of quasi-legal professions unless such representatives act as agents for the attorney". *Id.*; *see also People v. Doe*, 416 N.Y.S.2d 466 (1979); *In re John Doe Corp.*, 675 F.3d 482, 488-89 (2d Cir. 1982); *Permian Corp. v. United States*, 665 F.2d 1214, 1219-20 (D.C. Cir. 1981). "Statements made to an agent of the codefendant's attorney in the absence of

35

the speaker's attorney are protected...[although] the party asserting the joint-defense privilege must demonstrate that the communications were made to his attorney or the other party's attorney or between attorneys or to agent of the attorney for the purposes of seeking legal advice". *Id*.; *see also United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979).

Separately, "in conforming with the purpose of the work-product doctrine, the Court requires the parties asserting the joint-defense privilege to demonstrate that they shared a common legal interest and that prior to the work-product communications the parties had agreed to pursue a joint-defense strategy and to keep their work-product communications confidential". *Id*. at 573-74. "Information shared among co-parties in a joint representation context will only be protected under the work-product doctrine if those documents were prepared in anticipation of litigation...[and] thus, the parties asserting the privilege must demonstrate that a substantial probability of litigation existed at the time the material sought to be protected was created". *Id*.; *see also Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y. 1986). "The parties asserting the work-product doctrine and the joint-defense privilege must also show whether the material sought to be protected is ordinary work-product, that is, documents not implicating the mental impressions, conclusions, opinions or legal theories of an attorney or whether the material is opinion work-product". *Id*. at 575. "Ordinary work-product is discoverable if the party seeking discovery demonstrates a substantial need of the materials...and the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means...[while] opinion work-product...enjoys a near absolutely immunity and can be discovered only in very rare and extraordinary cases". *Id*.; *see also* FED. R. CIV. P. 26(b)(3); *P.&B. Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. 50, 57 (E.D.N.Y. 1991); *In re John Doe Corp.*, 675 F.2d at 492.

Again here, while not controlling in this instance as the New York common interest doctrine

may be broader, the Court is mindful of Third Circuit precedent.  The common-interest privilege, also known as the community-of-interest privilege, "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others [and] it applies in civil and criminal litigation...and even in purely transactional contexts".  *Teleglobe*, 493 F.3d at 364; *see also Sealed Air*, 253 F.R.D. at 309.  "The requirement that the clients' separate attorneys share information (and not the client themselves) derives from the community-of-interest privilege's roots in the old joint-defense privilege...[and] helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate their legal strategies".  *Id*. at 364-65.  Similarly, "the congruence-of-legal-interests requirement ensures that the privilege is not misused to permit unnecessary information sharing".  *Id*. at 365.  "Parties asserting this privilege...bear the burden of proving it applies".  *Id*. at 365 n.2.

The common-interest doctrine "protects communications made between attorneys when all members of the community share a common legal interest in the shared communication".  *Sealed Air*, 253 F.R.D. at 309; *see also Teleglobe*, 493 F.3d at 364; *Cooper Health System v. Virtua Health, Inc.*, 259 F.R.D. 208, 213 (D.N.J. 2009).  "Although the most common statement of the degree of interest required is that the interest be identical, not similar, and be legal, not solely commercial, the Third Circuit has not specifically adopted such a stringent approach...[and has, instead,] noted that members of a community of interest must share at least a substantially similar legal interest".  *Id*. at 309-10; *see also Teleglobe*, 493 F.3d at 365; *Duplan Corp. v. Deering Milliken, Inc*., 397 F. Supp. 1146, 1172 (D.S.C. 1975); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc*., 174 F.R.D. 609, 634 (M.D. Pa. 1997).  Thus, "the fact that...parties [may be] on adverse sides of a business deal...does not compel the conclusion that the parties did not share a common legal interest", such as when the

parties may face "the possibility of joint litigation in which they would share a common interest". *Id*. at 310; *see also Hewlett-Packard Co. v. Bausch & Lomb, Inc*., 115 F.R.D. 308, 310-12 (N.D. Cal. 1987). Although some courts have chosen not to adopt the same reasoning, "the weight of case law suggests that...privileged information exchanged during a merger between two unaffiliated businesses would fall within the common-interest doctrine". *Id*.; *see also Cavallaro v. United States*, 153 F. Supp. 2d 52, 61 (D. Mass. 2001), *aff'd on other grounds*, 284 F.3d 236 (1st Cir. 2002); *Rayman v. Am. Charter Fed. Sav. & Loan Ass'n*, 148 F.R.D. 647, 655 (D. Neb. 1993).

Importantly, the common-interest doctrine is only applicable "if an underlying privilege has been established". *Id*. at 309; *see also Andritz Sprout-Bauer*, 174 F.R.D. at 634; *Cooper Health*, 259 F.R.D. at 213. Further, the common-interest doctrine "only applies when clients are represented by separate counsel" and is not identical to the "co-client" situation, which is to say that "in the community-of-interest context...courts can afford to relax the degree to which clients' interests must converge without worrying that their attorneys' ability to represent them zealously and single-mindedly will suffer" because the clients have separate attorneys. *Teleglobe*, 493 F.3d at 365-66.

The Court notes that in *LaPorta v. Gloucester County Bd. of Chosen Freeholders*, 340 N.J. Super. 254, 262 (App. Div. 2001), the New Jersey Appellate Division, citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989), *cert. denied*, 502 U.S. 810 (1991), held that "communications need not only be among counsel for the clients" as "communications between counsel for a party and an individual representative of a party with a common interest are also protected" under the common interest doctrine. *LaPorta* also set forth three (3) requirements in order for the common interest doctrine to be asserted: "(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties".

*LaPorta*, 340 N.J. Super. at 262.

### 10.    Joint-Client Privilege

While not specifically mentioned by either of the parties in this case, the Court notes the joint-client privilege.  Again, while not controlling in this instance as New York joint-client privilege may be broader, the Court is mindful of Third Circuit precedent.

The joint-client privilege may only be invoked when "multiple clients engage one or more common attorneys to represent them on a matter of interest to all".  *Id*. at 362.  "Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the understanding of the parties and the lawyer in light of the circumstances" and must be "distinguished from situations in which a lawyer represents a single client but another person with allied interests cooperates with the client and the client's lawyer".  *Id*.; *see also* Restatement (Third) of the Law Governing Lawyers § 75 comment C.  A co-client representation continues "until a client discharges the lawyer, ...the lawyer withdraws, ...[or the] relationship terminates by implication" due to circumstances readily apparent to all joint clients that their "legal interests have diverged too much to justify using common attorneys".  *Id*.; *see also* Restatement (Third) of the Law Governing Lawyers § 31; *Fed. Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d 454, 463 (1st Cir. 2000); *Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, 1051 (6th Cir. 1989); *In re Dow*, 132 B.R. 853, 858 (Bankr. S.D. Ohio 1991); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc*., 167 F. Supp. 2d 128, 129 (D. Mass. 2001).  "The keys to deciding the scope of a joint representation are the parties' intent and expectations" as "finding too broad the scope of a joint representation gives the parties more control over each other's ability to waive the privilege than they intended and...subjects them to losing it in litigation with one another".  *Id*. at 363.

"When co-clients and their common attorneys communicate with one another, those

communications are in confidence for privilege purposes...[and] the privilege protects those communications from compelled disclosure to persons outside the joint representation". *Id*. "Waiving the joint-client privilege requires the consent of all joint clients", although "a client may unilaterally waive the privilege as to its own communications with a joint attorney so long as those communications concern only the waiving client...[and] may not...unilaterally waive the privilege as to any of the other joint clients' communications or as to any of its communications that relate to other joint clients". *Id*. Importantly, "if two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that relates to matters of common interest is privileged as against third persons". *Id*. at 366-67. This is to say that "because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, their legal interests must be identical...in order that an attorney can represent them with all the candor, vigor, and loyalty that our ethics require". *Id*. at 367.

### 11. Implied Waiver of Privilege

Privilege may not be used both as a sword and a shield. *In re Human Tissue Prods. Liab. Litigation*, 255 F.R.D. 151, 158 (D.N.J. 2008). Indeed, "a litigant cannot at one and the same time make use of those privileged communications which support his position while hoping to maintain the privilege as those communications which undercut his legal position". 1 Edna Selan Epstein, The Attorney-Client Privilege and the Work Product Doctrine 508 (5th ed. 2007) ("Epstein"). "Courts have found an implied waiver of the attorney-client and/or attorney work product privilege where a client affirmatively places otherwise privileged information at issue in the case". *In re Human Tissue*, 255 F.R.D. at 158. There are several factors that courts have considered in determining whether a waiver by affirmative reliance has occurred. These include:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;

40

(2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and

(3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975); *see also In re Human Tissue*, 255 F.R.D. at 159; *Rhone-Poulenc Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994).

Other courts have focused on overriding fairness considerations in assessing whether an implied waiver has occurred. *In re Human Tissue*, 255 F.R.D. at 159. *See*, e.g., *Goldberg v. Hirschberg*, 10 Misc.3d 292, 806 N.Y.S.2d 333, 335 (N.Y. Sup. Ct. 2005) ("The sanctity of the attorney-client privilege notwithstanding, '[it] may implicitly be waived when [a party] asserts a claim that in fairness requires examination of protected communications.'")(*quoting United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *Wolosoff*, 196 N.J. Super at 567 ("We are persuaded that 'when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege.'"); *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 238-39 (M.D. Fla. 1994) ("A party waives the attorney-client and accountant-client privileges which attach to various communications if that party 'injects into the case an issue that in fairness requires an examination of otherwise protected communications.'"). Whether fairness requires disclosure is decided "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted". *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000).

**B.     Defendant's Motion to Compel and Extend Discovery**

Initially, the Court notes that it has granted Defendant's motion for leave to file an Amended Answer, Affirmative Defenses, and Counterclaims.  [dkt. entry no. 58]  Thus, the Court finds that Plaintiff's relevance arguments with respect to the contents of Defendant's original Answer, Affirmative Defenses, and Counterclaims are moot.

Defendant's Interrogatory no. 17 states:

> For each of the claims which comprise the balances you contend are owed by Defendant under Counts One and Two of your Complaint and for each claim which you contend is a potential "Future Loss" under Count Three of your Complaint, identify by claim number and claimant number (a) the initial date upon which the claim or accident 'was reserved at 50% of the resinsured attachment point'; (b) the amount you are relying upon for determination of when a claim was at or above 50% of the reinsured attachment point; (c) the date you actually provided notice of the claim to IOA Re and/or Defendant; and (d) the bates number for each such notice.

*See* Def.'s Br., dkt. entry no. 46-4 at Ex. C.  Plaintiff substantively answered Interrogatory no. 17 by providing a Table listing claimant name, claim number, date of notice, and bates reference number "for each claim which comprises the balances owed by Defendant under Counts One and Two of the Complaint and for each claim which is a Future Loss under Count Three of the Complaint" ("Table 1") and by stating that "these initial notices provide Plaintiff's reserve levels".  *See* Def.'s Br., dkt. entry no. 46-5, Ex. D.  The Court notes that Defendant's original Affirmative Defenses included "breach of contract" and "failure to satisfy conditions precedent" (Def.'s Answer, dkt. entry no. 7 at 5), contentions which Defendant maintains relate to Plaintiff's compliance under "Article X(B)" of the Agreements.  *See* Def.'s Br., dkt. entry no. 46-2 at Ex. A.  The Court notes that Article X(B) states that "the following categories of claims shall be reported...immediately, regardless of any questions of liability...or coverage...: 1. Any accident reserved at 50% of the reinsured attachment point; 2. Any accident involving a brain injury; 3. Any accident resulting in burns over 25% or more of the body; or 6. Any spinal cord injury".  *Id.*  Having reviewed Defendant's Interrogatory no. 17 and Plaintiff's response thereto, the Court finds Plaintiff's answer to be insufficient and directs Plaintiff to supplement its answer to Interrogatory no. 17 (a) and (b) by adding appropriate columns to Table 1 and by referencing specific responsive documents by Bates number.

Defendant's Interrogatory no. 1 states:

> For each of the claims which comprise the balances you contend are owed by Defendant under Counts One and Two of your Complaint identify by claim number and claimant name for each claim (a) the total amount you allege is owed; (b) the amount which you allege is owed for 'indemnity'; (c) the amount you allege is owed for 'medical'; (d) the amount you allege is owed for 'expense'; and (e) any amount owed for underlying 'extra or non-contractual damages or legal fees and expenses attendant to the defense thereof'.

*See* Def.'s Br., dkt. entry no. 46-6 at Ex. E.  Plaintiff answered Interrogatory no. 1 by objecting "because it seeks information...already in the possession of...Defendant", as "Defendant conducted an audit of the...Agreements at Plaintiff's offices in November 2009...[and] was given access to Plaintiff's records for all claims under the...Agreements and...made copies of same". *See* Def.'s Br., dkt. entry no. 46-7, Ex. F.  Plaintiff notes that "those records were produced as part of Defendant's initial disclosures" and maintains that "any information relating to the amounts owed for each claim which comprises the balances owed by Defendant under Counts One and Two of the Complaint is...[and has been] readily available to Defendant".  *Id.*  Plaintiff further notes that the "claim audit forms prepared by Defendant and/or IOA Re during the November 2009 audit...demonstrate that Defendant examined the amounts owed for indemnity, medical, expenses, or extra or non-contractual damages or legal fees and expenses attendant to the defense thereof for each claim" and that "these claim audit forms were previously produced and bates numbered by Defendant".  *Id.*  In addition, Plaintiff notes that the "Agreements do not expressly require Plaintiff to provide the amounts owed for indemnity, medical, expenses or extra or non-contractual damages or legal fees and expenses attendant to the defense thereof".  *Id.*  Plaintiff substantively answered Interrogatory no. 1 by providing a Table listing claimant name, claim number, amounts due from Defendant, and reserves "for each claim which comprises the balances owed by Defendant under Counts One and Two of the Complaint" ("Table 2"), by stating that "there have been no claims from Everest to Plaintiff that involved extra or non-contractual damages or legal fees and expenses attendant to the defense

thereof", and by stating that "no portion of the amounts billed by Plaintiff to Defendant include extra or non-contractual damages or legal fees and expenses attendant to the defense thereof". *Id*. The Court again notes that Defendant's original Affirmative Defenses included "breach of contract" and "failure to satisfy conditions precedent" (Def.'s Answer, dkt. entry no. 7 at 5), contentions which Defendant maintains relate to Plaintiff's compliance under "Article X(A)" of the Agreements. *See* Def.'s Br., dkt. entry no. 46-2 at Ex. A. The Court notes that Article X(A) states that Plaintiff "agrees to advise...[Defendant] promptly of all claims coming under...the [Agreements] on being advised...and to furnish...[Defendant] with such particulars and estimates regarding same as are in the possession of" Plaintiff. *Id*. Having reviewed Defendant's Interrogatory no. 1 and Plaintiff's response thereto, the Court finds Plaintiff's answer to be sufficient in part and insufficient in part as the burden placed upon Defendant to derive the informaton requested would be substantially greater than that placed upon Plaintiff given Plaintiff's knowledge of and facility with the business records referenced. See FED. R. CIV. P. 33(d); see also *Microtron*, 269 F. Supp. at 25; *Singer*, 191 F. Supp. 322; *Gagen*, 15 F.R.D. 44; 4 MOORE'S FEDERAL PRACTICE, 2d Ed. 2534. Accordingly, the Court directs Plaintiff to provide answers to Interrogatory no. 1 (a), (b), (c), and (d) by adding appropriate columns to Table 2 and by referencing specific responsive documents by Bates number.

Topics 1, 2, 3, and 4 of Defendant's 30(b)(6) notice state:

> Pursuant to Rule 30(b)(6), Plaintiff shall designate and produce for deposition one or more officer(s), director(s), managing agent(s), or other persons(s) to testify on its behalf, regarding the following matters:
>
> 1. The dollar amount that Plaintiff is requesting for each of the Claims including how the amount is apportioned among components of the Claims, including, medical, indemnity, expenses part of loss, loss adjustment expenses, and extra-contractual amounts.
> 2. The 'handling' of each of the Claims including the timing and amount of the initial amount of setting of reserves and any

44

subsequent modification of the reserves.

3.     Plaintiff's demand(s) for payment from Defendant.

4.     Damages suffered and/or relief sought by Plaintiff against
       Defendant.

*See* Def.'s Br., dkt. entry no. 46-8 at Ex. G.  The Court notes that Plaintiff declined to produce a

corporate designee with respect to these Topics and has not agreed to be bound by the testimony

previously provided by witnesses who may have testified regarding these Topics in their individual

capacities.  *See* Def.'s Br., dkt. entry no. 46-9 at Ex. H; *see also* Def.'s Reply Br. at 6.  In fact,

Plaintiff declined to allow those witnesses to testify as to the collective corporate knowledge.  *Id.*

Specifically, Plaintiff objects to Topic 1 on the basis that it is unreasonably cumulative, duplicative,

and burdensome pursuant to FED. R. CIV. P. 26(b)(2)(C) and for the reasons set forth above as part

of Plaintiff's objection to Defendant's Interrogatory no. 1.  *Id.*  Plaintiff also confirmed that "there

are no individuals besides Mr. Mauch or those already deposed upon which Plaintiff will rely for

testimony related to the dollar amount sought by Plaintiff".  *Id.*  Plaintiff objected to Topic 2 as

irrelevant because IOA Re "has never denied a claim that was reported before seven-years from the

expiration of the...Agreements...and IOA Re has...admitted that it could not substantiate a denial or

legal referral on the basis of later reporting" (*Id.*); as irrelevant because Defendant "has waived its

right to deny any claim not previously denied on the basis of any alleged late reporting" and because

Defendant "cannot avoid its obligation to pay in the absence of prejudice...which it admits it has not

suffered" (*Id.*); as unreasonably cumulative, duplicative, and burdensome under FED. R. CIV. P.

26(b)(2)(C) because "Defendant has already deposed the individuals...responsible for reserving and

reporting claims to Defendant" (*Id.*); and for the same reasons set forth above regarding Topic 1

(*Id.*).  Plaintiff also confirmed that "there are no individuals besides those already deposed upon

which Plaintiff will rely for testimony related to claims handling".  *Id.*  Plaintiff objected to Topic

3 because "it is unclear what information Defendant is seeking", based on the fact that "Defendant

has already deposed [Mr. Pawlowski]" in his individual capacity with respect to "demand letters", and based on the fact that "the billings from Plaintiff to Defendant that comprise Plaintiff's damages" within Topic 3 are "duplicative of Topic 4". *Id*.

Having reviewed Defendant's 30(b)(6) notice with respect to Topics 1, 2, 3, and 4 and Plaintiff's objections thereto, the Court declines to uphold Plaintiff's objections and compels the production of a corporate designee for Topics 1, 2, and 3. "Courts have soundly rejected...[the] argument that prior deposition testimony from individual fact witnesses relieves a corporation from designating a corporate spokesperson in response to a Rule 30(b)(6) notice of deposition...[and] the fact that individually named witnesses have testified concerning a subject is generally no obstacle to a 30(b)(6) deposition on the same subject". *Smith v. General Mills, Inc.*, 2006 U.S. Dist. LEXIS 19093, at *15-16 (S.D. Oh. 2006); *see also Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000); *Sabre v. First Dominion Capital, L.L.C.*, 2001 U.S. Dist. LEXIS 20637, at *7-8 (S.D.N.Y. 2002). The Court notes the cases cited by Plaintiff – *Novartis*, 203 F.R.D. at 163, *Johnson*, 269 F.R.D. at 415-16, and *State Farm*, 254 F.R.D. at 235-36 – but finds each of them distinguishable, as Plaintiff has not offered to be bound by individual testimony previously provided, as Plaintiff has produced significant discovery but not to the extent that the deposition of corporate designee with respect to Topics 1, 2, and 3 would be unduly burdensome, and Plaintiff declined to allow the individuals who were deposed, in the absence of any additional corporate designee, to testify as to corporate knowledge regarding Topics 1, 2, and 3. *See* Def.'s Br., dkt. entry no. 46-9 at Ex. H; *see also* Def.'s Reply Br. at 6. Given the Court's ruling with respect to Defendant's motion for leave to file an Amended Answer, Affirmative Defenses, and Counterclaims, the fact that significant additional discovery was provided after relevant depositions occurred including, but not limited to, electronic claim handling logs, and for the same reasons set forth above with respect to

Defendant's Interrogatory no. 17 and Interrogatory no. 1, the Court finds Topics 1, 2, and 3 relevant, reasonably calculated to lead to the discovery of admissible evidence, and sufficiently distinguishable from other 30(b)(6) Topics and therefore compels the deposition of Plaintiff's corporate designee regarding same.

With respect to Defendant's request to extend discovery, based upon the Court's rulings here and with respect to Defendant's motion for leave to amend, the Court will permit additional discovery. A new discovery schedule, the parameters of which shall be determined during an upcoming status conference and set forth in an Amended Scheduling Order.

### C.      Defendant's Motion for Protective Order

Based upon the arguments offered by the parties, and the very fact that Defendant's Amended Privilege Log is at issue, it is clear that the challenged documents are relevant pursuant to FED. R. CIV. P. 26, that Defendant has asserted work-product, attorney-client, and common-interest privileges over those documents, and that Plaintiff has disputed Defendant's designation with respect to entry nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, and 38.  *See* Pl.'s Opp'n Br., dkt. entry no. 54 at 4, 9-10; *see also* Pl.'s Opp'n Br., dkt. entry no. 454-1 at Ex. 1.  At this time, the Court finds that it is unable to accurately address the concerns raised by Plaintiff due to the abstract nature of the issue presented – namely, whether Defendant has properly asserted and/or waived various privilege claims – without reviewing the documents.  Although the Court makes no finding as to the propriety of Defendant's privilege claims, the Court does find that Plaintiff's request – and Defendant's offer (*see* Def.'s Br., dkt. entry no. 49 at 1-2 & 2 n.1) – provide sufficient grounds to warrant an *in camera* review.  An *in camera* review will provide the Court with the appropriate context within which to determine on whether the privilege claims challenged by Plaintiff have been appropriately asserted by Defendant.  Upon

concluding its review, the Court will issue an additional Order – relying upon the facts, law and reasoning set forth herein – as to which documents, if any, Defendant may be compelled to produce.

## IV.   CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 18th day of April, 2011,

**ORDERED** that Defendant's Motion to compel discovery responses and extend discovery [dkt. entry no. 48] is **GRANTED** as set forth above; and it is further

**ORDERED** that Defendant's Motion for protective order [dkt. entry no. 49] is **GRANTED** in insofar as the Court will conduct an *in camera* review of the documents and materials identified in Defendant's Amended Privilege Log as entry nos. 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, and 38;

**ORDERED** that Defendant shall provide the Court with the materials set forth above by **May 2, 2011**; and it is further

**ORDERED** that Defendant shall provide the Court with an alphabetical list identifying all of the senders, recipients, and parties copied on the above materials, including their names, positions, employers, and whether they were/are attorneys by **May 2, 2011**; and it is further

**ORDERED** that the Court will conduct a status conference on **April 29, 2011** at **2:30 P.M.,** to be initiated by Defendant's counsel, in order to discuss during which an Amended Scheduling Order will be set.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**