***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MUNICH REINSURANCE AMERICA, INC., | : : : : | |
|  | : | Civ. No.: 09-6435 (FLW) |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| AMERICAN NATIONAL INSURANCE COMPANY, | : : : : | |
| Defendant. | : : | |

**WOLFSON, United States District Judge**:

Two issues remain unresolved in this case involving complex retrocessional agreements between Plaintiff Munich Reinsurance America Inc. ("Munich") and Defendant American National Insurance Company ("ANICO"), in which, *inter alia*, Munich filed a Complaint alleging breach of contract for ANICO's refusal to pay certain claims under the "Retrocessional Agreements."[1] Following motion practice and a bench trial, the Court issued an Opinion on February 27, 2014, setting forth findings of facts and conclusions of law, the ultimate result of which was a determination that ANICO is liable to Munich on the nonpayment of certain claims covered by the Retrocessional Agreements and timely submitted by Munich, as well as pre- and post-judgment interest

---

[1] As detailed in my many previous opinions in this matter, the "Retrocessional Agreements" are agreements of workers' compensation reinsurance, on a per-occurrence, or per-claim, basis, which cover the periods of November 1, 2000 through December 31, 2000 (also referred to as the "Stub Year"), and January 1, 2001 through December 31, 2001.

on those claims.  In that Opinion, the Court further instructed the parties to submit a stipulated sum certain of damages, in accordance with the Court's decision.  The parties have been unable to reach an agreement, and thus Munich has submitted an application for the amount of damages it believes appropriate, which ANICO opposes.  Additionally, ANICO has filed a timely motion pursuant to Fed. R. Civ. P. 52(b) for additional findings related to this Court's decision.  I address ANICO's motion and Munich's application in this Opinion, granting in part and denying in part ANICO's motion and granting in part and denying in part Munich's application.

I.   OVERVIEW

The underlying facts and general claims at issue in this litigation have been thoroughly discussed in this Court's previous decisions.  *See Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co.*, 893 F. Supp. 2d 686 (D.N.J. 2012); *Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co.*, 936 F. Supp. 2d 475 (D.N.J. 2013); *Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co.*, __ F. Supp. 2d __, 2014 WL 793129 (D.N.J. 2014).  Because I write primarily for the benefit of the parties in this Opinion, I recite only that which is necessary to my decision.

In my decision dated February 27, 2014, I concluded that ANICO breached its payment obligations under the Retrocessional Agreements for claims that were properly ceded to ANICO via IOA Re[2] before the expiration of certain "Sunset Provision" deadlines in the Retrocessional Agreements, but on which ANICO has failed to pay. *Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co.*, 2014 WL 793129, at *52.  Accordingly, I concluded that Munich is entitled to damages in the form of payment of any and all

---

[2]   IOA Re is ANICO's agent, responsible for ANICO's obligations under the Retrocessional Agreements.

outstanding bills on properly ceded claims, as specifically identified in the Appendix of my February 27, 2014 decision (the "Appendix"). *Id.*; *see also id.* at App'x, as amended b Dkt. No. 167. I further found that Munich is entitled to prejudgment interest on the amounts billed for these claims beginning on the date of the billing, but no earlier than December 22, 2009, the date Munich filed its Complaint in the present action, at the annual rate identified in New Jersey Court Rule 4:41–11(a)(ii).[3] Because certain information regarding payments, as well as the most current prejudgment interest rate, was lacking, I directed the parties to provide the Court with a proposed a sum certain of damages based upon the claims identified in the Appendix, including the appropriate amount of prejudgment interest, to be offset by any adjusted premium amounts.[4] Finally,

---

[3] Rule 4:42–11(a) provides, in pertinent part

> (a) Post Judgment Interest
> . . .
> (ii) For judgments not exceeding the monetary limit of the Special Civil Part at the time of entry, regardless of the court in which the action was filed: commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.
>
> (iii) For judgments exceeding the monetary limit of the Special Civil Part at the time of entry: in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum.

R. 4:42–11.

[4] Specifically, I explained:

> I am unable to calculate a sum certain of damages owed Munich at this juncture because (1) some time has passed since the parties submitted the amount billed but outstanding on these claims, such that additional bills may now be due, (2) I find that Munich is entitled to prejudgment interest

3

I issued a declaration that ANICO may not withhold future payment based on the defenses presented in this litigation for those claims that have been properly ceded to ANICO, as identified in Appendix, but for which Munich has yet to submit any bill for payment.

## II. DISCUSSION

### A. ANICO's Rule 52(b) Motion

ANICO's Rule 52(b) motion requests several additional findings.[5] First, ANICO requests that this Court take judicial notice of alleged admissions that Munich made in a prior, and separate, litigation in state court in Illinois. Second, ANICO argues that this Court should find that Munich must provide "particulars and estimates," in line with Article X of the Retrocessional Agreements, prior to ANICO being obligated to pay on claims that I found were properly ceded to, but unpaid by, ANICO.[6] Munich opposes each of these requested findings as improper and/or without merit.

---

> on these claims. . . and (3) the amount that Munich is owed on its claims appears to be offset by an adjusted premium amount based on the number of claims payable by ANICO.

*Munich Reins. Am., Inc. v. Am. Nat'l Ins. Co.*, 2014 WL 793129, at *48. In that connection, I noted that "[n]either party has supplied this Court with a proper means for calculating or adjusting the amount due to Munich on properly ceded but unpaid claims based upon [an] apparent offset of adjusted premiums." *Id.* at *48 n.95.

[5] Rule 52(b) provides in relevant part: "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly . . . ." Fed. R. Civ. P. 52.

[6] ANICO also requests that this Court make a "finding" that ANICO is entitled to offset Munich's damages by the amount of $227,710, the amount of a premium payment due under the Stub Year Retrocessional Agreement that Munich sent to IOA Re, but which IOA Re mistakenly forwarded to another reinsurer by mistake. Such a request is improper, as the "finding" is more appropriately dealt with in my damages assessment; the offset that ANICO requests is not a finding of fact, but rather a conclusion that pertains to the appropriate amount of damages.

ANICO requests the Court take judicial notice of certain alleged admissions Munich made in a prior litigation, *American Re-Insurance Co. v. MGIC Investment Corp.*, Civ. No. 77CH1457 (Ill. Circ. Ct. Oct 20, 1987) (mem. op. and order).[7] Specifically, ANICO argues that in the *MGIC Investment* decision, Munich (formerly known as American Re-Insurance Co.) admitted to taking positions regarding the duties a reinsured owes a reinsurer that are contrary to, or at least inconsistent with, the positions that Munich took in the present case.  ANICO contends that the *MGIC Investment* decision is properly subject to judicial notice under Fed. R. Evid. 201, and further, that this Court must take such notice based on ANICO's request.

Rule 201 provides in relevant part that a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The rule further provides that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2).  In that connection, it is well established that a court "may take judicial notice of another court's opinion— *not for the truth of the facts recited therein*, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies Inc. v. Wah Kwong Shopping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *see also Morrissey v. Luzerne Cnty. Cmty. Coll.*, 117 F. App'x 809, 815 (3d Cir. 2004) ("[F]acts adjudicated in a prior case fall short of this [Rule 201] standard." (Citing *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001))).  "Taking judicial notice of the truth of the

---

[7] ANICO first raised this request for judicial during the bench trial, and I reserved decision on the matter at that time; in my decision dated February 27, 2014, I made no explicit reference to ANICO's request for judicial notice.

5

contents of a filing from a related action could reach, and perhaps breach, the boundaries of proper judicial notice." *Werner*, 267 F.3d at 295; *see also Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384 (2d Cir. 1992) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source.").

Here, ANICO's request runs afoul of these limitations on the taking of judicial notice. ANICO does not seek a finding of the existence of the *MGIC Investment* decision, but rather a finding as to the "admissions" Munich made in that decision, as found by the Illinois court. This request falls outside the bounds of proper judicial notice taking.[8] *S. Cross Overseas Agencies Inc.* 181 F.3d at 426. Moreover, regardless of the propriety of taking notice of the *MGIC Investment* decision, it is wholly irrelevant to the instant matter. That decision concerned the standard for disclosure of information by the reinsured to the reinsurer of the business of the *underlying insured*; in this case, the relevant dispute was over the reinsured's disclosure obligations to the reinsurer of the *reinsured's own business*. Thus, the "admissions" upon which ANICO bases its proposed additional findings are not relevant to resolving the present controversy. Finally, and perhaps most significantly, the *MGIC Investment* decision applied Illinois law; in this case, New York law governs. In other words, the reasoning—and Munich's arguments—in the *MGIC Investment* decision regarding the duties owed between the

---

[8] Moreover, ANICO's request is flawed because the "admissions" on which it bases it proposed findings are not admissions of Munich, but rather are the Illinois court's summary and interpretation of arguments that Munich had made in that proceeding. A court's reasoning in another case may be precedential or persuasive—although in this instance it is neither—but the facts and conclusions in another court's opinion certainly cannot be judicially noticed as an adjudicative fact under Rule 201. *Werner*, 267 F.3d at 295; *see also Prall v. Ellis*, Civ. No. 08-6050(FLW), 2012 WL 6090203, at *1 (D.N.J. Dec. 4 2012) (same).

reinsured and reinsurer have little, if any, application to the duties in this case. Accordingly, for these reasons, I reject ANICO's request for additional findings based on the *MGIC Investment* decision.

ANICO also requests additional findings that Munich is obligated to supply "particulars and estimates" when it submits claims in accordance with the Retrocessional Agreements. Specifically, ANICO argues that Munich must provide updated case summaries on all claims, including updated medical information related to the underlying claim; merely providing a billing amount does not satisfy Munich's reporting obligations under Article X of the Retrocessional Agreements. In response, Munich contends that such a finding is not supported by the evidence because ANICO has previously paid on claims that were submitted without backup documentation.[9]

Article X of the Retrocessional Agreements provides in relevant part: "[Munich] agrees to advise [IOA Re for and on behalf of ANICO] promptly of all claims under this Agreement on being advised by [Everest National], and to furnish the Reinsurer with such particulars and estimates regarding the same as are in the possession of [Munich]." Pl.'s 1-2 (Art. X).[10] At trial, Munich employee Michael Frantz, who currently manages Munich's reinsurance claim operations division, testified that he agrees that reporting of "particulars and estimates" is a requirement of Article X, which entails providing, when available, a description of the accident or injury that caused the loss. 6/17/13 Tr. at 110-

---

[9]  Munich also argues that such a finding is improper because ANICO never requested it following the trial. Munich is incorrect. Although the specific question of Munich's general obligations under the particulars and estimates clause of Article X was never directly at issue, ANICO did submit proposed findings of facts on this issue. *See* Def. FF&CL at ¶¶ 126-29.

[10]  References are to the trial record, and are cited in the same format as in my February 27, 2014 decision.

11. Mr. Frantz further agreed that it was Munich's practice to also include such information as descriptions of the loss and the coverage; liability, damage, and reserve analyses; and the strategy being followed on the underlying claim; however, he did not believe that the Retrocessional Agreements required such detailed reporting, but rather that the "particulars and estimates" clause required "some more detail other than just numbers." *Id.* at 123-24. Employees at IOA Re testified that they expected to receive a similar amount of detail in order to determine whether the claim fell within the scope of the Retrocessional Agreements. *See, e.g.*, 6/20/13 Tr. at 171-72 (Dorosz) ("We need to identify the claimant, the specifics behind the claim, the amount of medical, the amount of indemnity, and all the particulars related to that claim so that we can adjudicate it by the terms of the agreement that we have in place."). From the record, it appears that Munich initially provided such information when it submitted claims, but as the parties' performance under the Retrocessional Agreements progressed, there came a time when Munich would submit claims without updating the underlying claim information. *See* 6/21/13 Tr. at 37 (Washburn) ("The summaries . . . were being provided initially . . . [but] in later years we were receiving the same summary with only the financial being changed so we weren't getting any current medical updates on the claimant."); *id.* ("It was the same notice that was being provided several years later."); *id.* at 38 ("I haven't gotten backup documentation [on the claims] . . . for several years."). Notably, Munich has not provided any evidence to the contrary—*i.e.*, evidence showing that it may bill on claims without providing supporting documentation.[11]

---

[11] Munich does argues that ANICO paid out on claims that Munich had submitted without supporting documentation, which, according to Munich, shows that ANICO does not require such documentation in order to pay on a claim. Although it appears that

In light of the foregoing, I find that claims reporting under Article X requires Munich to provide particulars and estimates supporting the claim, which is information sufficient for ANICO, through its agent IOA Re, to determine that the claim falls within the scope of its obligations under the Retrocessional Agreements. To be sure, once ANICO can ascertain that a claim falls under the Agreements, consistent with my decision in the February 27, 2014 Opinion, ANICO may not withhold payment on the claim. *See Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, __ F. Supp. 2d at __, 2014 WL 793129 at *53 ("[T]he Court declares that ANICO may not withhold future payment based on the defenses presented in this litigation for those claims that have been properly ceded to ANICO, as identified in this Opinion, but for which Munich has yet to submit any bill for payment."); *see also* Dkt. No. 164 (Order Dated Feb. 27, 2014) ("ORDERED that . . . ANICO may not withhold future payment, based on defenses raised in this litigation, on the properly ceded claims . . . .").[12]

### B. Munich's Application For Sum Certain Of Damages

In my February 27, 2014 Opinion and Order, I concluded that Munich is entitled

---

ANICO may have paid on certain claims without complete supporting documentation, there is nothing in the record explaining why this occurred, and thus I cannot determine if, lacking supporting information, IOA Re nevertheless was able to satisfy itself of the appropriateness of the claim on some other basis. Moreover, Munich's argument is contrary to the plain terms of the Retrocessional Agreements, as well as its own employee's testimony that "particulars and estimates" requires something more than just billing amounts. Indeed, apart from ANICO's payment on certain claims, Munich has not provided any evidence showing that it is under no obligation to provide supporting documentation when it submits a claim for payment under the Retrocessional Agreements.

[12]   This finding is further consistent with my declaratory judgment ruling, in which I explained that "ANICO cannot avoid its payment obligations for these claims due to any reporting delays or the fact that they arise out of (i) injuries sustained while being on or around a roof, unless the individual is a roofing contractor or subcontractor, or (ii) primary policies of workers compensation written by Everest Re." *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, __ F. Supp. 2d at __, 2014 WL 793129, at *47.

to payment on all outstanding billings for the claims identified in the Appendix, as well as prejudgment interest on those bills at the annual rate set forth in R. 4:41-11(a)(iii), but without the 2% increase in rate. I further concluded that prejudgment interest shall begin on the date Munich filed its Complaint in the instant matter, December 22, 2009, for all claims billed as of that date, and on the date of receipt by IOA Re for any additional claims remitted to ANICO after Munich's filing of the Complaint.[13] Because the proposed damages submitted with Munich's post-trial briefing did not align with my decision in the February 27, 2014 Opinion and Order, I ordered the parties to submit stipulated damages that were consistent with my decision, or, should no stipulation be reached, an application for a sum certain of damages. I also determined that if Munich had properly submitted requests for payments on any of the allowed claims after trial but before I rendered my decision, Munich could apply for these damages as well, along with corresponding prejudgment interest. The parties have been unable to agree upon the proper amount of damages, and Munich now submits its application, which ANICO opposes.

According to Munich, consistent with the claims and interest allowed by my February 27, 2014 Opinion and Order, the proper amount of damages is calculated as follows: $6,375,007.37 on allowed but unpaid claims plus $133,907.89 of prejudgment interest on those claims, minus $186,803.00 of premium adjustments and $5,395.54 of prejudgment interest on those adjustments, for a total of $6,316,716.72 in damages and prejudgment interest.

ANICO opposes several aspects of Munich's calculations. First, ANICO argues

---

[13] I found it equitable to use the date that IOA Re received the billing notice, rather than the date Munich prepared or mailed such notice.

10

that, notwithstanding the Court's order granting Munich permission to seek damages based on requests for payments that were submitted after trial, and on which ANICO has not paid, the sum certain of damages should not include these post-trial billings because Munich has not provided evidence supporting these billings, such as the appropriate particulars and estimates.[14] Second, ANICO contends that Munich's calculations impermissibly include prejudgment interest on two claims—McManus and Sis—for which Munich is not seeking actual damages based on any outstanding, unpaid payment request. Third, ANICO argues that it is entitled to an additional offset for a premium adjustment that it never received from Munich for the Stub Year, in the amount of $277,710.00, as well as corresponding reduction in prejudgment interest amounting to $24,809.47.

In its application for damages, Munich submits a spreadsheet identifying: the claimant name and number; the dates of Munich's billing notices and, if any, ANICO's payments; the date from which prejudgment interest is calculated and the corresponding annual rate of prejudgment interest. Munich's spreadsheet contains a sum total for the amount of outstanding claims, and the amount of prejudgment interest on those claims, as well as premium adjustments. This spreadsheet, although detailed, is, however, simply a summary of the amounts that Munich contends are due on the allowed claims; it contains no supporting documentation. In that connection, ANICO argues in its opposition—and Munich does not dispute—that Munich has submitted to ANICO no documentation with its payment requests that were presented after trial in this case. Instead, it appears that Munich has provided ANICO only with billing notices showing the amount due on a

---

[14] For the purposes of calculating the sum certain of damages, ANICO does not challenge the adequacy of the previously submitted billings.

11

claim; there is apparently no other information contained in these notices.

I have found that Article X of the Retrocessional Agreements requires Munich to provide particulars and estimates related to any claim submitted to ANICO for payment. Here, however, Munich has failed to submit *any* supporting information—to ANICO or to this Court—in connection with its post-trial payment requests. Accordingly, I find that Munich has not shown that it is currently entitled to damages based on any request for payment submitted after trial.[15]

ANICO next argues that the amount of damages should not include prejudgment interest on two claims for which Munich is not owed any outstanding payment on the claims themselves. Specifically, ANICO contends that for both the McManus and Sis claims, Munich is not claiming any actual outstanding payment due to it from ANICO; yet, Munich requests prejudgment interest in the amount of $5,353.07 on the McManus claim, and $1,644.78 on the Sis claim. Although not citing any law, ANICO contends that "a zero-damages award properly accrues $0 in prejudgment interest" and thus Munich's calculations on the McManus and Sis claims are in error.

Review of the spreadsheet Munich submitted in connection with its application for a sum certain of damages reveals that the prejudgment interest pertaining to the

---

[15] Although my February 27, 2014 decision did not include any finding regarding Munich's obligations under the particulars and estimates clause of Article X, neither did I make any determination that Munich was not bound by the plain terms of the Retrocessional agreements. Thus, my decision that Munich has not demonstrated that it is currently entitled to damages on post-trial billings is fully consistent with my February 27, 2014 decision. Moreover, even if the particulars and estimates clause of Article X does not apply to subsequent payment requests on an existing, properly noticed claim, such as those at issue here, Munich's failure to provide *any* evidence whatsoever supporting these post-trial payments requests militates against awarding such damages to Munich on equitable grounds alone. It would be unfair to allow Munich to collect on billings that neither ANICO nor this Court can confirm are accurate.

McManus and Sis claims is not based on the outstanding balance of these claims at the time of trial or the filing of Munich's instant application. Instead, as noted above, for each claim Munich lists several requests for payments that were not timely paid by ANICO, with prejudgment interest accruing on those claims from the appropriate date. Where ANICO remitted partial or full payment on the claims, that amount is deducted from the outstanding balance that Munich claims it is owed, along with a corresponding reduction in the amount of accrued interest.

In the case of the McManus and Sis claims, is it undisputed that ANICO currently owes Munich no payment on the claims themselves. However, for each of these claims (as with many others), there was a period of time during which Munich had submitted a request for payment that, as of the time litigation had commenced until some later date, remained unpaid by ANICO. It is on that period of time that Munich's prejudgment interest calculation is based. For example, in the case of the Sis claim, when Munich filed its Complaint, there was $61,499.69 of outstanding payment on the claim that Munich had billed ANICO; over the course of the litigation, Munich billed an additional $15,189.44 on the Sis claim. Apart from one payment in the amount of $2,734.74 that ANICO made in March 2011, the balance of the Sis claim remained unpaid by ANICO until October 19, 2012. Thus, Munich's request for prejudgment interest on the Sis claim is not based on the amount due at the time of its application for damages, but instead on the period of time during which Munich was owed money on a properly ceded claim— *i.e.*, between the date the Complaint was filed and the date ANICO finally paid off the outstanding balance in October 2012. The same holds true for the McManus claim; there were periods of time after the Complaint had been filed in which Munich had outstanding

13

requests for payment on the claim.

This is an appropriate application of prejudgment interest, which, I noted in my February 27, 2014 Opinion, functions "to compensate the claimant for the loss of income the money owed would have earned if payment had not been delayed." *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, __ F. Supp. 2d at __, 2014 WL 793129, at *50 (internal quotation marks omitted) (quoting *Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 642 (D.N.J. 1998); *see also Musto v. Vidas*, 333 N.J. Super. 52, 754 A.2d 586, 598-99 (App. Div. 2000) ("The primary consideration in awarding prejudgment interest is that the defendant has had the use, and the plaintiff has not of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled."). Accordingly, I find that prejudgment interest is appropriate on the McManus and Sis claims, and reject ANICO's argument to the contrary.

Lastly, ANICO seeks to offset its damages based on the amount of a premium adjustment it never received from Munich for the Stub Year Retrocessional Agreement. Specifically, ANICO argues that it never received a premium payment in the amount of $277,710.00, and thus any award of damages should be reduced by that amount. Munich opposes this offset,[16] contending that this Court previously found that ANICO's agent, IOA Re, received the premium but erroneously sent it to another company, and thus ANICO, not Munich, should be responsible for the missing premium.

---

[16] Munich does not dispute that ANICO is entitled to an offset for other premium adjustment amounts that Munich apparently owes on the Retrocessional Agreements, totaling $186,803, as well as a corresponding deduction in prejudgment interest running from the date Munich filed its Complaint in the amount of $5,395.54.

14

In my February 27, 2014 Opinion, I made the following findings related to the missing Stub Year premium.[17] Prior to the Stub Year, Munich had obtained from IOA Re retrocessional coverage from Continental Casualty for the period from November 1, 1999 to October 31, 2000 (the "1999 Year"). Munich's files revealed that when Munich remitted payment for adjusted premiums to IOA Re in 2002, it supplied a check in the amount necessary to cover premiums for both the 1999 Year and the Stub Year, but failed to indicate to IOA Re that the check was intended to cover both years; instead, it appeared from Munich's remittance that the check was intended for only the 1999 Year. Accordingly, IOA Re sent the entire payment that Munich submitted for both the 1999 Year and the Stub Year to Continental Casualty[18]; only after IOA Re reviewed its files in 2012 did it determine that the amount remitted by Munich at that time should have been applied to both the 1999 Year and the Stub Year, and that it had sent the entire amount of the check to Continental Casualty in error. Based on these facts, I found that (i) IOA Re received the Stub Year premium, but erroneously, based on Munich's failure to properly identify the payment, remitted the premium to Continental Casualty; and (ii) ANICO itself has never received the premium for the Stub Year.

In opposing ANICO's request for an offset, Munich argues that ANICO's agent, IOA Re, is the party that committed the error, and thus ANICO should not be entitled to benefit from that error in the form of an offset. Furthermore, Munich argues that in any event, ANICO is in a better position to recover the missing premium because ANICO has a claim that it is entitled to the money, and IOA Re has a closer business relationship with

---

[17] *See generally Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, __ F. Supp. 2d at __, 2014 WL 793129, at *13.

[18] Later known as Castlewood, and now known as Enstar; in this Opinion, for convenience and clarity I refer to this company as Continental Casualty.

15

the company that the parties believe currently is holding the missing money. I find none of these arguments compelling.

As I found, the reason the premium was not delivered to ANICO was because Munich failed to address it properly; at the time the check was sent, Munich had business relationships with, and owed money to, both Continental Casualty and ANICO, and, by exercising the care to address the check correctly, Munich was in the best position to ensure that its payments were sent to the correct party. Thus, Munich's contention that ANICO is to blame for not receiving the premium is contradicted by my findings. On this basis alone, I find that ANICO is entitled to an offset of damages for the amount of premium it never received. Furthermore, Munich's contention that ANICO is better positioned to recover the missing premium is equally without merit. Munich cites no rule of law, and this Court has found none, suggesting that a party in ANICO's position has a stronger claim to recover missing money than does a party in Munich's position. Similarly, although ANICO has an indirect relationship with Continental Casualty through its relationship with IOA Re, Munich had a direct relationship with Continental Casualty through their own retrocessional agreements. Thus, this fact, if anything, weighs if favor of placing the burden of recovering the missing premium on Munich, not ANICO. For these reasons, and weighing the equities, I find that ANICO is entitled to offset damages by the amount of the outstanding premium for the Stub Year in the amount of $277,710.[19]

---

[19] ANCIO also requests that the offset include a corresponding reduction in prejudgment interest in the amount of $24,809.47. ANICO provides no explanation of this amount of interest, which presumably runs from some date when ANICO believes it was owed the premium. The decision to award prejudgment interest in this case is governed by equitable principles. *Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, __

**CONCLUSION**

For the for the reasons stated in this Opinion, the Court grants in part ANICO's motion under Rule 52(b), finding that the "particulars and estimates" clause in Article X of the Retrocessional Agreements obligates Munich, when reporting claims, to provide information sufficient for ANICO to determine that the claim falls within the scope of its obligations under the Retrocessional Agreements.

The Court also grants in part Munich's application for damages, determining that Munich is entitled to a sum certain of damages based on all claims that were listed in the Appendix of my February 27, 2014 Opinion and Order up through the amounts billed by Munich at the time of the trial in this case, along with the appropriate amount of prejudgment interest[20]; additionally, ANICO is entitled to an offset in the amount of the missing Stub Year premium plus corresponding interest.

The amount of damages based on unpaid, allowed claims through the time of trial is $5,963,412.91. The amount of prejudgment interest on those claims is $128,165.29. ANICO's offset for premiums is $464,513.00 (of which $277,710.00 pertains to the missing Stub Year premium) with an additional offset of interest on the undisputed

---

F. Supp. 2d at __, 2014 WL 793129, at *49 (quoting *Gleason v. Norwest Mortgage, Inc.*, 253 F. App'x 198, 204 (3d Cir. 2007)). Here, however, ANICO has failed to provide a basis for what would effectively be an award of prejudgment interest on its failure to receive the premium; indeed, ANICO has not provided any evidence of when Munich's obligation to pay this premium amount arose in the first instance. Moreover, the amount of interest appears to run from a time well before the filing of Munich's Complaint, which is inconsistent with my decision to limit Munich's award of prejudgment interest to that date. For these reasons, although I determine that ANICO is entitled to an offset based on the amount of the missing premium, I do not find it appropriate or equitable for ANICO to receive a corresponding offset based on prejudgment interest.

[20] Including prejudgment interest on the McManus and Sis claims, even there is no request for damages based on outstanding amounts owed on those claims.


premium adjustments in the amount of $5,395.54. Thus, the total amount of damages to which Munich is entitled to is $5,621,669.66.

    An Order will be entered consistent with this Opinion.

Date: May 27, 2014                                            /s/  Freda L. Wolfson
                                                                               FREDA L. WOLFSON, U.S.D.J.